# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-1704

MICHAEL VELEZ, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      October 9, 2009 )

*Jeany Mark*, of Washington, D.C., was on the pleading for the appellant.

*Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty,* Deputy Assistant General Counsel; and *Justin P. Zimmer*, all of Washington, D.C., were on the pleading for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and DAVIS, *Judges*.

GREENE, *Chief Judge*: Veteran Michael Velez appeals, through counsel, a May 31, 2007, decision of the Board of Veterans' Appeals (Board) that determined that no new and material evidence had been submitted to reopen previously and finally disallowed claims for service connection for an acquired psychiatric disorder, to include post-traumatic stress disorder (PTSD), and for a cervical spine disability. Record (R.) at 1-5. Mr. Velez argues for reversal of the Board decision on the grounds that the Board erred by requiring him to submit new and material evidence. He asserts that the claims before the Board were for "service connection for a nervous condition and for a cervical spine disorder," which are separate and distinct from his previously denied claims for "service connection for PTSD and for a cervical condition as secondary to [a] service-connected nose scar." Appellant's (App.) Brief (Br.) at 7-8. Alternatively, he argues that, should the Court determine that the Board was correct in requiring new and material evidence to adjudicate his cervical spine claim, the Board failed to provide an adequate statement of reasons or bases for its

decision because it did not consider a related August 2002 medical record. *Id.* at 11. For the reasons that follow, the May 2007 Board decision will be affirmed in part and vacated in part, and one matter will be remanded for further proceedings consistent with this decision.

## I. BACKGROUND

Mr. Velez served honorably in the U.S. Army from January 1968 to December 1969. R. at 8. In July 1970, a VA regional office (RO) awarded him service connection for a nose condition. R. at 75-76. In July 1984, Mr. Velez claimed service connection for a back disability and a stress disorder. R. at 176-80. He stated that ever since service he had "been nervous and depressed" and was "hav[ing] nightmares and flashbacks." R. at 176. In support of his claim, he submitted a November 1985 clinical psychology report that included a diagnosis of "[a]djustment disorder with depressed mood related to marriage problems and a d[i]vorce in 1984." R. at 202. During a hearing before the RO he stated that he had a "nervous condition." R. at 221. In August 1986, the RO, inter alia, denied service connection for PTSD and an adjustment disorder with depressed mood. R. at 240. Mr. Velez did not appeal that decision and it became final. *See* R. at 1-1143.

In October 1990, Mr. Velez attempted to reopen his claim, stating that he had experienced traumatic events in service and that he had become "very nervous." R. at. 285. In April 1991, the RO determined that service connection for PTSD was not warranted and stated that "there is no evidence of a nervous disorder while in active service nor evidence of a present d[iagnosis] of PTSD." R. at 355. Mr. Velez appealed and, in November 1992, the Board remanded the matter for the RO to obtain a medical examination to determine an appropriate diagnosis of Mr. Velez's condition. Mr. Velez underwent two VA examinations, the outcome of which was an opinion that he had "[n]o gross psychiatric disorder." R. at 593-600. The case was returned to the Board and the Board again remanded the matter for the RO to determine whether new and material evidence had been submitted sufficient to reopen Mr. Velez's PTSD claim. R. at 829-38. The Board noted specifically that "all of the competent medical evidence of record reveals that the veteran does not have PTSD, nor is he currently diagnosed with any other current psychiatric disorder." R. at 834.

2

In December 1998, Mr. Velez submitted a letter stating that he had discovered medical evidence that had not been considered. R. at 844. Along with that letter was a disability certificate signed by a private physician who stated that Mr. Velez could "receive work on a 'light duty' basis for the next 4 weeks." R. at 843. In April 2000, the RO again declined to reopen Mr. Velez's PTSD claim. R. at 871. Also in April 2000, Mr. Velez claimed service connection for "cervical lumbar disc disease as a secondary condition due to a primary condition of a fracture of nose," which the RO denied in March 2001. R. at 908, 946-51.

In July 2002, Mr. Velez submitted a statement requesting service connection for a "cervical condition as secondary to the accidents suffered on [his] face." R. at 958. He also stated that he had a "nervous condition" and that he was taking "medication for depression, anxiety, insomnia." *Id*. A VA primary care follow -up note dated in August 2002 stated: "[Mr. Velez] is a Vietnam veteran who has chronic pain in the upper back and neck because of an injury while in the military. . . . Other problems are . . . depression . . . ." R. at 1009. In September 2002, the RO sent to Mr. Velez a letter requesting that he submit new and material evidence to support his claims. R. at 960-63. The RO noted that Mr. Velez had "recently filed a claim for service connection compensation benefits for neck disorder secondary to service connection disability of scar on nose which was previously denied as cervicalgia, cervical discongenic disease; . . . nervous disorder (previously denied as [PTSD])." R. at 960. In December 2002, the RO found that Mr. Velez had not submitted new and material evidence with regard to his claims for service connection either for a neck disorder or for a "psychiatric condition (claimed as depression, anxiety, insomnia)." R. at 989-95. Mr. Velez appealed and, in November 2005, he underwent a VA examination. The examiner found that Mr. Velez did not meet the criteria for a diagnosis of PTSD and diagnosed him as having a "[d]epressive disorder NOS [(not otherwise specified); c]annabis [d]ependence." R. at 1091. In June 2006, the Board remanded the matter for compliance with the notice provisions of 38 U.S.C. § 5103(a). R. at 1107-10.

In December 2006, the RO issued a Supplemental Statement of the Case finding that Mr. Velez had not submitted new and material evidence to reopen claims for service connection for (1) an acquired psychiatric disorder, to include PTSD, and (2) a cervical spine disorder. R. at 1123-35. The matters were returned to the Board and, in its May 2007 decision, the Board determined

3

that new and material evidence had not been submitted to reopen the previously and finally disallowed claims for service connection for an acquired psychiatric disorder, to include PTSD, and for a cervical spine disability. R. at 1-5. The Board noted that Mr. Velez's claim "[f]or a psychiatric disorder, to include PTSD, ha[s] been denied previously for lack of evidence of an in-service incurrence of a psychiatric condition and lack of a PTSD diagnosis." R. at 5. The Board then determined that none of the evidence submitted since that time was material as it did not establish a link between a diagnosed psychiatric condition and service or report a PTSD diagnosis. *Id.* As to the cervical spine claim, the Board noted that the newly submitted evidence included reports of treatment for a cervical spine condition but found that that evidence was not material because it did not establish a link between the spine condition and service. R. at 5-6. This appeal followed.

## II. APPLICABLE LAW AND ANALYSIS

### A. New and Material Evidence–PTSD Claim

Pursuant to 38 U.S.C. § 7104, "when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered," unless "new and material evidence is presented or secured with respect to the claim which has been disallowed," 38 U.S.C. § 5108, or it is shown that the prior final decision was the product of clear and unmistakable error, *Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc). Mr. Velez argues only that the Board erred in requiring him to submit new and material evidence for his claim for a nervous disorder. He asserts that this claim is a separate and distinct claim from his previously denied claim for PTSD, and, thus, the Board should have adjudicated it on the merits. In support of that argument, Mr. Velez notes that his medical records contain diagnoses of depression, anxiety, and insomnia, and points out that the decisions relied upon by the Board to hold that new and material evidence was required are an August 1986 RO decision that denied service connection for PTSD and adjustment disorder with depressed mood (R. at 239-40) and an April 2000 RO decision that declined to reopen his previously denied PTSD claim (R. at 870-73).

In support of his assertion that there are no previous final denials of his claims for a nervous disorder and a cervical spine disorder, Mr. Velez cites *Ephraim v. Brown*, 82 F.3d 399 (Fed. Cir.

4

1996), and *Boggs v. Peake*, 520 F.3d 1330 (Fed. Cir. 2008), in which the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that claims based on separate and distinctly diagnosed conditions must be considered separate and distinct claims for purposes of VA benefits. In *Ephraim*, the claimant had been awarded VA benefits for depressive neurosis. During his appeal of the disability rating assigned, Mr. Ephraim received a diagnosis of, and was awarded service connection for, PTSD with depressive neurosis. *Ephraim,* 82 F.3d at 401. He appealed, arguing that his PTSD warranted an increase in the disability rating assigned, and this Court concluded that it lacked jurisdiction over the matter because Mr. Ephraim's PTSD claim was not a "separate and distinct disability claim that had not been previously considered." *Ephraim v. Brown*, 5 Vet.App. 549, 550 (1993). The Federal Circuit reversed that decision, reasoning that "a newly diagnosed disorder, whether or not medically related to a previously diagnosed disorder, can not be the same claim when it has not been previously considered." *Ephraim*, 82 F.3d at 401. The Federal Circuit recognized the complexity of determining diagnoses and etiologies within the field of mental disorders, but concluded that a "claim that could not have been adjudicated prior to the original notice of disagreement, because all or a significant element of that claim had not yet been diagnosed, is a new claim although both the new and the prior diagnosis relate to mental disorders." *Ephraim*, 82 F.3d at 402.

In *Boggs*, the appellant provided evidence of his sensorineural hearing loss after the Board had finally denied a claim for conductive hearing loss. The Board construed this evidence as a request to reopen the previously denied claim. Mr. Boggs appealed, arguing that the sensorineural hearing loss and conductive hearing loss were indeed two claims and thus distinct from one another. Therefore, he maintained that the Board had erred in considering whether the evidence of sensorineural hearing loss was new and material evidence to reopen his claim for conductive hearing loss. The Court affirmed the Board's decision and, on appeal, the Federal Circuit reversed the Court's conclusion that a claim for hearing loss is the same claim regardless of what part of the ear is affected because the underlying symptomatology is the same. The Federal Circuit held that the "'factual basis' of a claim for purposes of 38 U.S.C. § 7104(b) is the veteran's disease or injury rather than the symptoms of the veteran's disease or injury." *Boggs*, 520 F.3d at 1335. The Federal Circuit further held that because "a properly diagnosed disease or injury cannot be considered the same

factual basis as [a] distinctly diagnosed disease or injury," it follows that "claims based upon distinctly and properly diagnosed diseases or injuries cannot be considered the same claim." *Id.* The Federal Circuit noted that under a "symptomatology standard," a later-filed claim could be prejudiced by a previously denied claim characterized by similar symptoms. *Id.* at 1337. The Federal Circuit concluded therefore that, in accordance with 38 C.F.R. § 7104(b), claims for differently diagnosed diseases or injuries "must be considered independently because they rest on distinct factual bases." *Id.*

This Court recently interpreted the holdings of *Ephraim* and *Boggs* in *Clemons v. Shinseki*, 23 Vet.App. 1 (2009). In that case, the Court determined that an initial claim for a particular mental condition submitted by a pro se claimant

> cannot be a claim limited only to that diagnosis, but must rather be considered a claim for any mental disability that may reasonably be encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim.

*Id*. at 5. The Court reasoned that "[i]t is generally the province of medical professionals to diagnose or label a mental condition, not the claimant" because as a layperson, a claimant is not generally competent to render a diagnosis. *Id.* at 6. The Court determined that for psychiatric conditions, "multiple diagnoses may represent subjective differences of opinions of examiners, rather than multiple conditions," and further noted that treating each diagnosis as a separate claim "would force a veteran to continually file new claims as medical evidence is developed during his initial claim." *Id*. at 8.

In light of the above caselaw, we conclude that, in determining whether new and material evidence is required, the focus of the Board's analysis must be on whether the evidence presented truly amounts to a new claim "based upon distinctly diagnosed diseases or injuries" (*Boggs*, 520 F.3d at 1337), or whether it is evidence tending to substantiate an element of a previously adjudicated matter. To reflexively conclude that the appearance of a new diagnosis is always evidence amounting to a new claim could have the unfortunate side effect of limiting the benefits awarded in some claims that would otherwise relate back to prior proceedings. Indeed, determining that a different diagnosis raises a new claim may have the long-term consequence of limiting a claimant's

6

effective date if benefits are ultimately awarded. For example, 38 U.S.C. § 3.156(c)(3) (2009) provides that if a claim is reopened and granted based in part upon service department records that were not obtained by VA in an original proceeding for specified reasons, then the effective date for the award may relate back to the date of the original claim. Similarly, the Court outlined a variety of procedural arguments in *Ingram v. Nicholson*, 21 Vet.App. 232 (2007), that could relate the effective date of a purportedly reopened claim to a prior proceeding. However, if the evidence presented relates to a distinctly diagnosed condition from that previously denied, a claimant is entitled to benefit from the notice and assistance procedures applicable to newly filed claims without having to first prove that the evidence submitted is both new and material in nature.

In this case, the evidence of record reveals that Mr. Velez's claimed psychiatric condition has been described by himself and construed by VA according to multiple manifestations involving overlapping symptomatology. *See, e.g.,* R. at 176-80, 191-92, 202, 239-40, 285, 354-55, 438, 451-52, 599-600, 958, 989-95, 1091. Indeed, when he initially applied for benefits in July 1984, he stated that he was seeking service connection for a "stress disorder" and listed his symptoms as *nervousness*, depression, nightmares, flashbacks, inability to maintain personal relationships, and sensitivity to loud noises. R. at 176. Although Mr. Velez more recently termed his claim as one for a "nervous disorder," he had, since filing his claim in July 1984, consistently asserted that he suffered from nervousness. Thus, the RO had before it evidence that Mr. Velez suffered from a nervous disorder, and a review of its August 1986 decision reveals that the RO considered Mr. Velez's entire mental health picture before denying service connection for PTSD and an adjustment disorder. In its 1986 decision, the RO noted the diagnosis of "adjustment disorder with depressed mood," but denied service connection for that condition because it was determined to be related to marital problems rather than to service. R. at 239-40. The RO also denied service connection for PTSD on the basis that the evidence failed to show a diagnosis of that condition. *Id*. The RO's decision, however, reveals that it explicitly considered whether Mr. Velez had *any diagnosed* psychiatric condition that could be related to service. R. at 239. Specifically, the RO noted that Mr. Velez's service medical records were "completely silent as to a neuropsychiatric condition." *Id.*

Indeed, at the time of the August 1986 RO decision, the only diagnosis of record was that of an "[a]djustment disorder with depressed mood related to marriage problems and a d[i]vorce in

7

1984." R. at 202. Further, at the time that Mr. Velez claimed service connection for a "nervous condition" in July 2002, the only evidence that he suffered from that condition was his lay assertions to that effect. Even if Mr. Velez's lay assertions could establish a current diagnosis of a nervous condition, *see Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (describing situations where lay evidence can be competent and sufficient to provide medical diagnosis), because the RO previously considered Mr. Velez's assertions that he suffered from a nervous condition when it adjudicated his claim for a "stress disorder," his lay diagnosis cannot amount to a new claim for a condition distinctly diagnosed from that which had previously been adjudicated.

Thus, Mr. Velez's case is distinguishable from *Boggs*, *supra*, in which the claimant was diagnosed with a particular ear condition for which he was denied service connection and attempted to reopen his claim with evidence of a differently diagnosed ear condition. This case is also distinguishable from *Ephraim,* where the claimant presented with two distinctly and definitively diagnosed conditions, which the Federal Circuit held constituted two separate claims for benefits. In this case, Mr. Velez's claim for service connection was for a "stress disorder" with symptoms of nervousness, depression, nightmares, flashbacks, inability to maintain personal relationships, and sensitivity to loud noises. That claim was denied on the basis that the evidence failed to establish a diagnosis of any psychiatric condition that could be related to service. R. at 239. It is clear that "any" psychiatric condition includes a psychological nervous condition. Therefore, Mr. Velez's submission of further evidence relating to a nervous condition did not introduce a new claim based on a distinctly diagnosed condition from the claim for a stress disorder previously denied by the RO. *See Boggs* and *Ephraim*, both *supra*. Accordingly, contrary to Mr. Velez's contentions, because he did not appeal the RO's denial of service connection for a psychiatric condition at the time, the decision became final. Thus, the Board did not err in requiring him to submit new and material evidence to reopen his claim for a psychiatric disability. *See* 38 U.S.C. § 5108 (Secretary must reopen previously and finally disallowed claim when "new and material evidence" is presented or secured); *Boggs, Ephraim,* and *Clemons,* all *supra*; 38 C.F.R. § 3.156(a) (2009).

## B. Cervical Spine Disorder Claim

Concerning Mr. Velez's claim for service connection for a cervical spine disorder, he first argues that, in its March 2001 decision, the RO did not adjudicate the cervical spine claim on a direct

basis. Therefore, he asserts that the Board erred by requiring new and material evidence to be submitted to reopen that claim on a direct basis. In support of his argument, he notes that the RO determined that his "'present cervical condition is not **secondary** to the service connected nose scar.'" App. Br. at 9 (quoting R. at 947). The Secretary counters that the Board was not required to consider whether Mr. Velez was entitled to service connection on a direct basis because Mr. Velez framed his July 2002 claim as one for service connection "for 'cervical condition as secondary to accidents suffered on [his] face.'" Secretary's (Sec'y) Br. at 20 (quoting R. at 958). The Secretary also argues that Mr. Velez was required to submit new and material evidence to reopen that direct service-connection claim because in its March 2001 decision the RO "specifically reviewed the evidence on a direct basis, observing that [Mr. Velez's] SMRs 'are silent as to findings of [him] been [sic] treated for a neck condition while in service.'" *Id.* (quoting R. at 947).

"[T]the Board is required to consider all issues raised either by the claimant . . . or by the evidence of record." *Robinson v. Peake,* 21 Vet.App. 545, 552 (2008) (citations omitted); *see* 38 C.F.R. § 3.303(a) (2009). In affirming *Bingham v. Principi*, 18 Vet.App. 470 (2004), "the Federal Circuit recognized that separate theories in support of a claim for a particular benefit are not equivalent to separate claims and that a final denial on one theory is a final denial on all theories." *Robinson,* 21 Vet.App. at 550 (citing *Bingham v. Nicholson,* 421 F.3d 1346, 1349 (Fed. Cir. 2005) ("[W]e similarly cannot recognize an exception [to the rule of finality] based on a purported legal error committed by the Board based on its failure to consider all possible theories that may support a claim."). The Federal Circuit recognized that "[e]ven if the Board's decision to deny a claim had been based on an incomplete or erroneous analysis of law or fact . . . . it still would be an adjudication of that claim," and finality would attach to that decision if not appealed. *Bingham,* 421 F.3d at 1349. Accordingly, regardless of whether the RO in March 2001 adjudicated Mr. Velez's cervical spine disorder claim on both direct and secondary bases, or whether he even raised the issue of direct service connection to the RO, because Mr. Velez failed to timely appeal the RO's March 2001 denial of service connection for a cervical spine disability, he is now foreclosed from having that matter adjudicated on a direct basis without either submitting new and material evidence to reopen the matter, or seeking revision of that decision on the grounds of clear and unmistakable

error. *See id.* (once decision becomes final, even if defective, it may "be corrected only through the two statutory exceptions to finality"); *Robinson, supra*.

Alternatively, Mr. Velez argues that should the Court determine that he must submit new and material evidence to reopen his cervical spine disability claim, the Court should remand the matter for the Board to adequately address the August 2002 VA primary care follow-up note. The Secretary concedes that remand of the matter is required because the Board failed to provide an adequate statement of reasons or bases. Sec'y. Br. at 19-22; *see Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Where the Board has . . . failed to provide an adequate statement of reasons or bases for its determinations . . . a remand is the appropriate remedy."). Specifically, the Secretary maintains that the August 2002 follow-up note was relevant to Mr. Velez's cervical spine claim and that the Board erred by not discussing that evidence. *Id.* The Secretary is right to concede. The 2002 follow-up note recorded that Mr. Velez had "chronic pain in the upper back and neck because of an injury while in the military." R. at 1009. Nothing in the Board's analysis addressed this piece of apparently relevant evidence. Accordingly, the matter must be remanded for the Board to be given the opportunity to do so and then present an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Tucker, supra; Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the May 31, 2007, Board decision is AFFIRMED to the extent that it determined that new and material evidence had not been submitted to reopen a claim for an acquired psychiatric condition, to include PTSD. The remainder of the Board decision is VACATED and the cervical spine matter is REMANDED to the Board for further development and readjudication consistent with this opinion.