Citation Nr: 1132115 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-17 245 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for a left knee disorder.

2. Entitlement to an initial compensable disability rating for service-connected bilateral hearing loss.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

D. Orfanoudis, Counsel




INTRODUCTION

The Veteran served on active duty from January 1962 to January 1982, including service in the Republic of Vietnam from October 1966 to October 1967 and from February 1971 to January 1972.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2005 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO), in Atlanta, Georgia, that reopened and denied entitlement to service connection for bilateral knee arthritis. This matter also arises from an April 2007 rating decision of the RO that granted service connection for bilateral hearing loss and assigned an initial noncompensable rating, effective May 6, 2002. These issues were previously before the Board in June 2009 at which time they were remanded for additional development. The case is now returned to the Board. 

The issue of service connection for a left knee disorder is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

VA audio examinations show Level II hearing impairment in each ear in May 2005; Level II hearing impairment in the right ear and Level IV hearing impairment in the left ear in July 2007; Level II hearing impairment in each ear in September 2009; and Level III hearing impairment in each ear in February 2011.


CONCLUSION OF LAW

The criteria for an initial compensable disability rating for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5103, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.321, 4.7, 4.85, 4.87, Tables VI, VII, Diagnostic Code 6100 (2010).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS


Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2002 & Supp. 2010), 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010), requires VA to assist a claimant at the time that he or she files a claim for benefits. As part of this assistance, VA is required to notify claimants of what they must do to substantiate their claims. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

The Veteran's hearing loss claim arises from his disagreement with the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

Next, the VCAA requires that VA make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The Veteran's relevant service, VA, and private medical treatment records have been obtained. There is no indication of any additional, relevant records that the RO failed to obtain. The Veteran has been medically evaluated. In sum, the Board finds that the duty to assist and duty to notify provisions of the VCAA have been fulfilled and no further action is necessary under the mandates of the VCAA. 

Higher rating

Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id. It is necessary to rate the disability from the point of view of the Veteran working or seeking work, 38 C.F.R. § 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the Veteran's favor. 38 C.F.R. § 4.3. If there is a question as to which disability rating to apply to the Veteran's disability, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2010). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2010); Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the Veteran's entire history is reviewed when assigning a disability rating, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). The Veteran is appealing the initial assignment of a disability rating, and as such, the severity of the disability is to be considered during the entire period from the initial assignment of the disability rating to the present time. Fenderson v. West, 12 Vet. App. 119 (1999). Additionally, in determining the present level of a disability for any increased rating claim, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary.

The Veteran was awarded service connection for bilateral hearing loss by rating action dated in April 2007, at which time an initial noncompensable disability rating was assigned effective May 6, 2002, the date of his claim for service connection. 

In rating hearing loss, disability ratings are derived from the mechanical application of the rating schedule to numeric designations assigned after audiometric evaluations are performed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). Disability ratings of bilateral hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity, as measured by a controlled speech discrimination test (Maryland CNC) and the average hearing threshold, as measured by puretone audiometric tests at the frequencies of 1,000, 2,000, 3,000 and 4,000 Hertz. The rating schedule establishes 11 auditory acuity levels designated from Level I, for essentially normal hearing acuity, through level XI for profound deafness. An examination for hearing impairment for VA purposes must be conducted by a State-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. Examinations will be conducted without the use of hearing aids. 38 C.F.R. § 4.85(a).

Under 38 C.F.R. § 4.85, Table VI (Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination) is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the percentage of speech discrimination and puretone average intersect. 38 C.F.R. § 4.85(b). The puretone threshold average is the sum of the puretone thresholds at 1,000, 2,000, 3,000 and 4,000 Hertz, divided by 4. This average is used in all cases to determine the Roman numeral designation for hearing impairment. 38 C.F.R. § 4.85(d). Table VII, (Percentage Evaluations for Hearing Impairment) is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal rows represent the ear having the better hearing and the vertical columns the ear having the poor hearing. The percentage evaluation is located at the point where the rows and column intersect. 38 C.F.R. § 4.85(e).

VA regulations also provide that in cases of exceptional hearing loss, when the puretone thresholds at each of the four specified frequencies (1,000, 2,000, 3,000 and 4,000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a). The provisions of 38 C.F.R. § 4.86(b) further provide that, when the puretone threshold is 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2,000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately.

A VA audiology consult dated in May 2005 shows that the Veteran reported a gradual decrease in hearing acuity since 1966. Audiological evaluation revealed that pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
30
40
50
90
52.50
LEFT
35
60
80
80
63.75

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and of 92 percent in the left ear. The diagnosis was sensorineural hearing loss of combined types.

Under Table VI of the regulations, the Veteran's hearing level in right ear was II, and his hearing level in the left ear was Level II. Under Table VII of the regulations, a Level II hearing impairment in each ear warrants a noncompensable disability rating. 38 C.F.R. § 4.85, Tables VI and VII, Diagnostic Code 6100 (2010).

A VA audiology consult dated in July 2007 shows that the Veteran reported a gradual decrease in hearing acuity since 1963. He described that the greatest difficulty was with understanding speech. Audiological evaluation revealed that pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
30
45
50
95
55.00
LEFT
35
55
75
80
61.25

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and of 80 percent in the left ear. The diagnosis was mild to profound sensorineural hearing loss in the right ear and mild to severe sensorineural hearing loss in the left ear.

Under Table VI of the regulations, the Veteran's hearing level in right ear was II, and his hearing level in the left ear was Level IV. Under Table VII of the regulations, a Level II hearing impairment in the better ear and a Level IV hearing impairment in the poorer ear warrants a noncompensable disability rating. 38 C.F.R. § 4.85, Tables VI and VII, Diagnostic Code 6100 (2010).

An undated addendum to a VA audio examination report, apparently conducted in September 2009, shows that the examiner opined that the Veteran's hearing loss alone should not be a barrier to a wide range of employment settings. The examiner added that many individuals with the Veteran's degree of hearing loss, or worse, function well in many occupational settings. He may have trouble working well in very noisy environments; in those where frequent non-face-to-face communication equipment (speakers, intercoms, etc.) was used; or where a great deal of attention to high frequency sounds (monitoring medical equipment or other "beeps and pings") was required. The Veteran had described that he could not hear people talking, could not hear over the telephone, and was unable to hear while driving. Audiological evaluation was said to have revealed that pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
35
45
55
95
57.50
LEFT
40
60
75
85
65.00

Speech audiometry revealed speech recognition ability of 92 percent in the right ear and of 96 percent in the left ear. The diagnosis was mild to profound sensorineural hearing loss in the right ear and mild to severe sensorineural hearing loss in the left ear.

Under Table VI of the regulations, the Veteran's hearing level in right ear was II, and his hearing level in the left ear was Level II. Under Table VII of the regulations, a Level II hearing impairment in each ear warrants a noncompensable disability rating. 38 C.F.R. § 4.85, Tables VI and VII, Diagnostic Code 6100 (2010).

The Board also notes that this VA examination report specifically addressed the functional limitations caused by the Veteran's hearing loss, and concluded that the hearing loss should not be a barrier to a wide range of employment settings. See Martinak v. Nicholson, 21 Vet. App. 447 (2007).

A VA audiology consult dated in February 2011 shows that the VA examiner reiterated that the Veteran's hearing loss alone should not be a barrier to a wide range of employment settings. The Veteran described that people would have to repeat themselves when talking to him, and that he would have trouble hearing normal conversations. Audiological evaluation revealed that pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Average
RIGHT
40
50
60
100
62.50
LEFT
50
70
80
90
72.50

Speech audiometry revealed speech recognition ability of 84 percent in each ear. The diagnosis was mild to profound sensorineural hearing loss in the each ear.

Under Table VI of the regulations, the Veteran's hearing level in right ear was III, and his hearing level in the left ear was Level III. Under Table VII of the regulations, a Level III hearing impairment in each ear warrants a noncompensable disability rating. 38 C.F.R. § 4.85, Tables VI and VII, Diagnostic Code 6100 (2010).

The Board also notes that the February 2011 VA examination report specifically addressed the functional limitations caused by the Veteran's hearing loss, as the Veteran described such effects as limited to people having to repeat themselves when talking to him, and having trouble hearing normal conversations. The examiner concluded that the hearing loss should not be a barrier to a wide range of employment settings. See Martinak, 21 Vet. App. at 447.

The Board has also considered whether a higher disability rating might be warranted based on exceptional patterns of hearing impairment. However, a compensable disability rating is not warranted under Table VIa as the Veteran's pure tone threshold was not 55 decibels or more at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) in either ear on any examination. Additionally, given that the evidence does not reflect a simultaneous puretone threshold of 30 dB or less at 1000 Hertz and a puretone threshold of 70 dB or more at 2000 Hertz on any examination, a higher disability rating pursuant to section 4.86(b) is also not warranted. 38 C.F.R. §§ 4.85, 4.86 (a) (2010).

As indicated above, the assignment of disability ratings for hearing impairment are derived by the mechanical application of the Schedule to the numeric designations assigned after audiometry evaluations are rendered. Lendenmann, 3 Vet. App. at 345. The Board recognizes the Veteran's contentions that his bilateral hearing loss is of greater severity than reflected by the assigned disability rating. However, notwithstanding the Veteran's descriptions, the audiometric testing results are dispositive evidence for a claim for a higher disability rating for hearing loss.

As noted above, this is an initial rating case, and consideration has been given to "staged ratings" since service connection was made effective (i.e., different percentage ratings for different periods of time). Fenderson, 12 Vet. App. at 119. However, in the present case, as the Veteran's symptoms remained constant throughout the course of the period on appeal, staged ratings are not warranted. The preponderance of the evidence is against the claim; therefore the benefit of the doubt rule is not for application. Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990).

Extra-schedular Consideration

Finally, the Board finds that the Veteran's bilateral hearing loss does not warrant referral for extra-schedular consideration. In exceptional cases where schedular ratings are found to be inadequate, consideration of an extra-schedular disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular disability rating is appropriate. Thun v. Peake, 22 Vet. App. 111 (2008). First, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability and the established criteria found in the rating schedule to determine whether the Veteran's disability picture is adequately contemplated by the rating schedule. Id. If not, the second step is to determine whether the claimant's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id.

The Board finds that the evidence does not warrant referral of the Veteran's claim for extra-schedular consideration. The level of severity of the Veteran's bilateral hearing loss is adequately contemplated by the applicable diagnostic criteria. The criteria provide for a higher rating, but as has been thoroughly discussed above, the rating assigned herein is appropriate. In view of the adequacy of the disability rating assigned under the applicable diagnostic criteria, consideration of the second step under Thun is not for application in this case. Accordingly, the claim will not be referred for extra-schedular consideration. 


ORDER

An initial compensable rating for bilateral hearing loss is denied.


REMAND

Unfortunately, another remand is required in this case as to the issue of service connection for a left knee disorder. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the appeal so that he is afforded every possible consideration. VA has a duty to make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A(a) (West 2002 & Supp. 2010); 38 C.F.R. § 3.159(c), (d) (2010).

The Veteran asserts that he has a left knee disorder that is manifested as a result of his period of active service. A private medical record dated in September 2005 had provided an opinion that the Veteran had bilateral knee osteoarthritis by X-ray which he may have acquired while in service. However, as there was no rationale for this opinion, in June 2009, the Board remanded the issue so that the Veteran could undergo a VA orthopedic examination so as to determine the precise nature, extent, onset, and etiology of the asserted left knee disorder.

A VA examination report dated in September 2009 shows that the Veteran reported injuring both knees while in Germany in 1962 to 1964 after jumping out of a tank. He also reported re-injuring both knees jumping in a hole in 1966 to 1967 in Vietnam. He described being seen in sick call in Germany and at a dispensary in Vietnam. He denied any surgical interventions. It was noted that the course since onset had been progressively worse. The diagnosis was mild medial femorotibial subluxation; minimal lateral patellofemoral and medial compartments of the femorotibial osteoarthritis; minimal suprapatellar bursa pouch effusion; and associated arthritis of the knee. The examiner opined that the Veteran's current left knee condition was less likely as not related to service as there was no evidence of the Veteran's complaints of left knee pain.

In Dalton v. Nicholson, 21 Vet. App. 23 (2007), the United States Court of Appeals for Veterans Claims (Court) found that an examination was inadequate where the examiner did not comment on the Veteran's report of in-service injury and, instead, relied on the absence of evidence in the Veteran's service treatment records to provide a negative opinion. Such is the case here. While the Veteran's history was noted in the introduction of the September 2009 VA examination report, in rendering an opinion, the VA examiner did not address the Veteran's reported in-service onset or continued symptoms since service in providing the negative opinion. Rather, the VA examiner relied upon the absence of any corroborating evidence. As such, this opinion is inadequate, and a remand for an addendum opinion concerning the etiology of the Veteran's left knee disorder is necessary prior to deciding the claim. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (indicating an opinion is considered adequate when it is based on consideration of an appellant's medical history and examinations and describes the disability in sufficient detail so the Board's evaluation of the claimed disability is a fully informed one). See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (holding that once VA undertakes the effort to provide an examination for a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided); see also Hicks v. Brown, 8 Vet. App. 417, 422 (1995) (concluding that inadequate medical evaluation frustrates judicial review).

Additionally, as the Veteran's claim of service connection for a right knee disability was granted by the RO during the pendency of this appeal in January 2011, the Board finds that an opinion should also be rendered by the VA examiner as to whether the asserted left knee disorder was either (a) caused by, or (b) is aggravated by the service-connected right knee disability. In this regard, the Board is required to consider all issues raised either by the claimant or by the evidence of record. See Velez v. Shinseki, 23 Vet. App. 199, 206 (2009); see also Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (on direct appeals to the Board, theories of substantive entitlement to benefits such as direct and secondary service connection are not independent for res judicata purposes, and can be lost forever if not addressed). The need for further examination of the Veteran is left to the discretion of the VA examiner providing the opinion. 

Accordingly, the case is REMANDED for the following action:

1. After associating any pertinent, outstanding records with the claims folder, obtain an addendum to the September 2009 VA examination report, preferably from the original examiner. The claims file must be made available to and reviewed by the examiner. Following a review of the claims file, the reviewing examiner is requested to provide an opinion indicating whether it is at least as likely as not that any left knee disability found to be present is related to service, to specifically include his competent report of an in-service jump from a jeep while in Germany and jump into a hole in Vietnam. In doing so, the examiner must also acknowledge the Veteran's competent report as to the onset and continuity of symptomatology since service.

The examiner is also requested to provide an opinion as to whether it is at least as likely as not that any left knee disorder found on examination was either (a) caused by, or (b) is aggravated (i.e., permanently worsened) by the Veteran's service-connected right knee disability.

If the original examiner is no longer available to provide requested opinion, another VA examiner must provide the necessary additional opinion. The need for an additional examination of the Veteran is left to the discretion of the VA examiner.

The examiner must discuss the rationale of the opinion, whether favorable or unfavorable, if necessary citing to specific evidence in the record.

2. Then readjudicate the appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

Thereafter, if appropriate, the case is to be returned to the Board, following applicable appellate procedure. The Veteran need take no action until he is so informed. He has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The purposes of this remand are to obtain additional information and comply with all due process considerations. No inference should be drawn regarding the final disposition of this claim as a result of this action.

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs