Citation Nr: 1527836 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 10-48 988 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) and adjustment disorder with depressed mood. 


REPRESENTATION

Veteran represented by: Christopher J. Boudi, Attorney


WITNESSES AT HEARING ON APPEAL

Veteran, Veteran's children


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1952 to October 1952.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. A November 2009 rating decision denied entitlement to service connection for PTSD and declined to reopen a previous decision denying entitlement to service connection for emotional instability manifested by enuresis. A March 2010 rating decision denied entitlement to service connection for depression.

The Board remanded this case in September 2011 and January 2015. The Agency of Original Jurisdiction (AOJ) completed all requested development, but continued the denial of benefits sought on appeal. As such, this matter is properly returned to the Board for appellate consideration.

This claim has previously been developed as two separate issues involving acquired psychiatric disorders, i.e. emotional instability manifested by enuresis and an acquired psychiatric disorder other than emotional instability, to include PTSD and depression. 

The Board notes that a claim for a disability includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009). However, a claim for one diagnosed disease or injury cannot be prejudiced by a prior claim for a different diagnosed disease or injury, when it is an independent claim based on distinct factual bases. Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008). In reconciling these holdings, the United States Court of Appeals for Veterans Claims (Court) held that when varying diagnoses are involved, in considering whether the claim presented is one to reopen or is a new claim to be adjudicated on the merits, "the focus of the Board's analysis must be on whether the evidence presented truly amounts to a new claim 'based upon distinctly diagnosed diseases or injuries' or whether it is evidence tending to substantiate an element of a previously adjudicated matter." Velez v. Shinseki, 23 Vet. App. 199, 204 (2009) (quoting Boggs, 520 F.3d at 1337 ).

Here, the Veteran was initially denied service connection for a nervous condition, which the RO characterized as a claim for emotional instability manifested by enuresis, in a June 1953 rating decision. In August 2005, the Veteran filed a claim of entitlement to service connection for a nervous condition, which the RO construed as a request to reopen the previously denied claim. Thereafter, in an April 2006 rating decision, the previous denial of entitlement to service connection for emotional instability manifested by enuresis was confirmed and continued. Both decisions became final. 38 U.S.C.A. § 7105(c) (West 2014), 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2014).

The Veteran subsequently filed a claim for PTSD in January 2009 and a claim for depression in November 2009, which the RO construed as a request to reopen his previously denied claims for emotional instability manifested by enuresis and as new claims for PTSD and depression. Because the Veteran was previously denied entitlement to service connection for emotional instability, and in light of the Court's holding in Clemons, the issues on appeal have been previously characterized by the Board as: (1) Whether new and material evidence sufficient to reopen a claim for service connection for emotional instability manifested by enuresis has been submitted; and (2) Entitlement to service connection for an acquired psychiatric disorder, other than emotional instability, to include PTSD depression. 

After a thorough review of the record, the Board finds that the Veteran's current claim of entitlement to service connection for an acquired psychiatric disability, to include PTSD and depression, constitutes the same claims that were denied in the June 1953 and April 2006 rating decisions. In this regard, the Veteran has continued to seek service connection for a psychiatric disability, however variously claimed and diagnosed, as due to traumatic events he experienced in service. His statements regarding the stressors associated with his claim for PTSD and depression are the same circumstances he cited as the cause of his nervous condition in his May 1953 and August 2005 claims. Thus, the Board is broadening the scope of the present claim because it turns upon essentially the same history, factual bases, and claimed symptomatology that were considered in the prior final rating decisions - that the Veteran experiences a psychiatric disorder as a result of his active service. Accordingly, under Boggs and Velez, new and material evidence would generally also be required to reopen the Veteran's claim of entitlement to service connection for an acquired psychiatric disorder, to include PTSD and depression.

However, under 38 C.F.R. § 3.156(c), if at any time after VA issues a decision on a claim, VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. In this case, the Veteran's service personnel records, which had not previously been requested or obtained by VA, were associated with the claims file in February 2009. These records, which existed and had not been previously considered by the RO in its previous denials, show various dates that the Veteran conducted certain training events, as well as additional information about the Veteran's civilian background. Additionally, they show the exact dates that the Veteran was under psychiatric observation while serving in the Marine Corps. As such, the Board finds that they are relevant to the Veteran's claim of entitlement to service connection for an acquired psychiatric disorder. Thus, the claim of entitlement to service connection for an acquired psychiatric disorder must be reconsidered on a de novo basis, without regard to the previous final denials. 38 C.F.R. § 3.156(c). The issue has been recharacterized accordingly as reflected on the title page.

In May 2011, the Veteran testified at a videoconference hearing before a Veterans Law Judge. Thereafter, the Veteran requested an additional videoconference hearing. In April 2015, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. Transcripts of both hearings have been prepared and associated with the claims file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

Resolving all doubt in his favor, the evidence shows that the Veteran has diagnoses of PTSD and adjustment disorder with depressed mood that have been linked to corroborated in-service personal assault stressors. 


CONCLUSION OF LAW

The criteria for establishing service connection for an acquired psychiatric disorder, diagnosed as PTSD and adjustment disorder with depressed mood, have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304(f) (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

As the Board's decision to grant service connection for an acquired psychiatric disorder is completely favorable, no further action is required to comply with the VCAA and implementing regulations with respect to this claim.

Legal Criteria

Under applicable law, service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2014). In general, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d) (2014).

To establish entitlement to service connection for PTSD, the record must contain the following: (1) medical evidence diagnosing PTSD in accordance with 38 C.F.R. § 4.125(a); (2) credible supporting evidence that a claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f); see also Cohen v. Brown, 10 Vet. App. 128 (1997).

The provisions of 38 C.F.R. § 4.125(a) require that a mental disorder diagnosis must conform to the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (DSM-IV), or, for claims received by or pending before the AOJ on or after August 4, 2014, the Fifth Edition (DSM-5). See 38 C.F.R. §§ 4.125, 4.130; 79 Fed. Reg. 45093 (Aug. 4, 2014). VA adopted as final, without change, the interim final rule and clarified that the provisions of this interim final rule do not apply to claims, such as this one, that have been certified for appeal to the Board or are pending before the Board as of August 4, 2014, even if such claims are subsequently remanded to the AOJ. See 80 Fed. Reg. 53, 14308 (March 19, 2015). As such, this claim is governed by DSM-IV, and further discussion of applicability of the revised regulations is not necessary.

There are special considerations for PTSD claims predicated on a personal assault. The pertinent regulation, 38 C.F.R. § 3.304(f)(5) , provides that PTSD based on a personal assault in service permits evidence from sources other than the Veteran's service records which may corroborate his or her account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(5). The M21-1MR also identifies alternative sources for developing evidence of personal assault, including private medical records, civilian police reports, reports from crisis intervention centers, testimonial statements from confidants such as family members, roommates, fellow service members, or clergy, and personal diaries or journals. M21-1MR, Part IV, Subpart ii, 1.D.17.n.

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance, substance abuse, episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5).

VA has defined personal assault very broadly to include an event of human design that threatens or inflicts harm. Examples of personal assault include rape, physical assault, domestic battery, robbery, mugging, stalking, and harassment. See VA Adjudication Procedure Manual M21-1MR, Part III, Subpart iv., Ch. 4, Section H, part 30(a) (Aug. 3, 2011). As the Veteran has claimed that he was the subject of verbal harassment and physical assault in service, as detailed below, the Board will consider the provisions of 38 C.F.R. § 3.304(f)(5), which provides that PTSD based on a personal assault in service permits evidence from sources other than a veteran's service records to corroborate his account of the stressor incident.

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value.

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).

Facts

The Veteran contends that he currently has an acquired psychiatric disorder due to intense racial discrimination and abuse he experienced during his active duty service. In numerous statements, some dating back to 1953, the Veteran described being harassed, physically assaulted, and threatened while at basic training shortly after the Marine Corps was integrated. The Veteran indicated that upon arrival to basic training, he was one of only two other African Americans and that he was called racist names and felt in fear of his life. The Veteran described one incident in which he was threatened by his squad leader and then asked to dig a hole, which he assumed was going to be his grave. In another incident, the Veteran reported being hit in the stomach with the butt of a rifle. He indicated that he was so scared that he would have night sweats and that in the morning, his bed sheets would be wet. The Veteran indicated that when he was accused of wetting his bed, he went along with that story in order to see a doctor so that he could tell someone about the abuse that he was suffering. He reported, however, that when he was taken for a psychiatric consultation and he described the abuse, he was discharged from service due to unsuitability. 

Service treatment records show that the Veteran denied bed wetting, and any other nervous trouble, when examined for entrance into service in August 1952. No defects or disorders were noted on the Veteran's enlistment examination. In a report dated on September 29, 1952, a medical officer indicated that the Veteran, described in the report as "dull," was "admitted to the Psychiatric Unit on his fourth training day on referral from his company commander because of his frequent bed wetting." The report indicated that the Veteran "could not satisfactorily avoid ostracism by the other men in his platoon because of his inability to control his frequent bed wetting." The medical officer also indicated that "[i]nterview and review of his past personal history reveals numerous unsuccessful attempts to obtain medical treatment for his problem." The Veteran was diagnosed with emotional immaturity manifested by severe enuresis. An aptitude board concluded that the Veteran was unsuitable for service and that the Veteran's condition existed prior to entry into service and was not aggravated by service. 

The Board notes that there are no records from the aforementioned psychiatric treatment included in the Veteran's service treatment records.

Personnel records show that the Veteran was "under recruit training" from August 23, 1952 to September 10, 1952, and that he was under psychiatric observation from September 11, 1952 to October 6, 1952. He was discharged on October 7, 1952. 

Post service, a VA Record of Hospitalization shows that the Veteran was admitted to a VA hospital in New York for psychoneurosis in May 1959. Thereafter, post-service VA treatment records are silent for treatment for a psychiatric disorder until January 2009. In a January 2009 VA mental health initial evaluation, the Veteran reported having "bad recollections" from when he was in the military. The Veteran was diagnosed with adjustment disorder with depressed mood and rule out PTSD.

During a February 2009 initial psychiatric evaluation, the Veteran described his two months in the Marine Corps as racially charged. He reported being demeaned because of his race, and that he continues to experience distrust and nightmares as a result. On mental status examination, the Veteran's mood was dysthymic. His cognition was intact, with no evident deficits, memory or otherwise. He was judged to be above average in intelligence. The Veteran was diagnosed with adjustment disorder with depressed mood and rule out dysthymic disorder. 

In May 2011, the Veteran was examined by a private psychologist, Dr. R.C. Dr. R.C. reviewed the Veteran's claims file, administered several psychological tests, and interviewed the Veteran. The Veteran reported that his drill instructor in basic training threatened to kill him and called him racist names several times a day. He also described being hit in the abdomen with a rifle butt. He indicated that he had never experienced this type of racism prior to joining the Marine Corps, and given the lynching hysteria of the times, he took the threats seriously and had trouble sleeping. The Veteran reported that when he did sleep, he had dreams of being attacked and would wake up sweating profusely. He reportedly experienced an extreme sense of horror in response to having his life threatened by his overseer. The Veteran reported that he still occasionally experiences disturbing dreams about his experiences in basic training, and he tries to avoid these disturbing recollections by thinking of something else. He denied experiencing realistic flashbacks during his waking hours, but he endorsed severe night sweats. The Veteran indicated that he used work as a means of forgetting his military past. 

The Veteran was administered a mini-mental state test in order to evaluate his cognitive state. The Veteran scored 24 out of 30 points, which placed him in a mildly impaired range, but which was normal for someone in his age group. When given a test to detect malingering in individuals claiming to have PTSD, the Veteran performed the test within normal limits, which showed his "sincerity and honest test taking effort." 

Dr. R.C. diagnosed the Veteran with PTSD and concluded that the Veteran showed symptoms of mild PTSD secondary to his "exposure to racism in a transitioning desegregating elitist branch of the United States military." Dr. R.C. indicated that he "believes [the Veteran's] story the way he tells it." He also indicated that the Veteran meets the minimal criteria for PTSD and the validity testing supports his earnestness in taking the examination. Dr. R.C. also noted that the Veteran's January and February 2009 VA diagnoses of adjustment disorder with depressed mood are suggestive of a severe degree of maladaptive functioning. 

The Veteran was afforded a VA examination in September 2013. The VA examiner diagnosed the Veteran with a cognitive disorder secondary to a medical condition not related to military service. The examiner also opined that the Veteran's stressor of racism was not adequate to support a diagnosis of PTSD; however, the examiner did not provide a rationale for this opinion. 

Analysis

The Board finds that the evidence supports granting the Veteran's claim of entitlement to service connection for an acquired psychiatric disorder, to include PTSD and adjustment disorder with depressed mood.

First, the Board notes that the Veteran has current diagnoses of PTSD and adjustment disorder with depressed mood. See May 2011 Private Examination Report; February 2009 VA Treatment Record. A PTSD diagnosis by a mental-health professional must be presumed to have been made in accordance with the applicable DSM criteria as to both the adequacy of the symptomatology and the sufficiency of the stressor absent compelling evidence to the contrary. Cohen v. Brown, 10 Vet. App. 128, 140 (1997); see also Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (holding that, in the absence of evidence to the contrary, medical professionals are presumed to be competent to render the diagnoses they render). Although a VA examiner opined in a September 2013 report that the Veteran did not meet the criteria for a diagnosis of PTSD, the evidence is at least in equipoise on the issue. When evidence is in relative equipoise, reasonable doubt must be decided in the Veteran's favor. Accordingly, resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran currently has diagnoses of PTSD and adjustment disorder with depressed mood in conformance with the DSM-IV. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Additionally, resolving all doubt in favor of the Veteran, the Board finds that the evidence supports an occurrence of an assault during service. While the Veteran's service records contain no specific reference to any abuse the Veteran claims to have endured while in the Marine Corps, the record does contain some corroborating evidence of behavioral changes occurring both during and immediately following his period of active service. The Veteran testified that after enduring the aforementioned threats and harassment for several weeks, he just could not take the abuse any more, and he asked to see a doctor. Although the aptitude board report contained in the Veteran's service treatment records indicates that the Veteran was admitted to the psychiatric unit after only four days of training, personnel records show that the Veteran was in recruit training for at least 18 days before he was recorded as being "under psychiatric observation." This evidence corroborates the Veteran's account of being subjected to harassment for weeks before he sought help. In addition, although it is not clear from the record whether the Veteran did experience enuresis while in basic training, or whether he lied about experiencing enuresis in an attempt to get away from his abusers, what is clear is that the Veteran had not had a bed-wetting problem prior to joining the Marine Corps, as he has competently and credibly reported since 1953. The Board finds that the onset of enuresis (or lying about the onset of enuresis) qualifies as evidence of a behavior change tending to corroborate the Veteran's account of in-service personal assaults. Additionally, at the April 2015 hearing, the Veteran's sons testified that the Veteran described the abuse he suffered while in basic training, which also corroborates the Veteran's account. As such, the Board finds Shedden element (2) has been satisfied. See Shedden, supra.

Finally, the evidence of record also establishes that the Veteran has been diagnosed as having PTSD and adjustment disorder with depressed mood, which is related to the in-service trauma. Dr. R.C. indicated that the Veteran's PTSD is due to the events he experienced in basic training, and the Veteran's VA mental health treatment centered, at least in part, on his memories of the abuse he suffered in basic training. Moreover, Dr. R.C. specifically opined that the VA diagnosis of adjustment disorder with depressed mood was related to the Veteran's in-service personal assault. As such, the Board finds Shedden element (3) has been satisfied. See Shedden, supra.

Given the current diagnoses of PTSD and adjustment disorder with depressed mood, corroborating evidence of an in-service personal assault, and the positive nexus opinions from Dr. R.C., the Board resolves any reasonable doubt in the Veteran's favor and finds that the evidence supports granting service connection for an acquired psychiatric disorder. See 38 C.F.R. § 3.102.


ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include PTSD and adjustment disorder with depressed mood, is granted.



____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs