# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1865

THOMAS L. BINGHAM, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    August 27, 2004   )

*Barbara J. Cook*, of Cincinnati, Ohio, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Christine M. Cote*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

KRAMER, *Chief Judge*:  The appellant, through counsel, appeals an October 3, 2001, Board of Veterans' Appeals (Board or BVA) decision in which the Board denied an effective date prior to April 25, 1991, for the award of service connection for bilateral hearing loss.  Record (R.) at 2, 4. The appellant and the Secretary each filed a brief, and the appellant filed a reply brief.  In a March 3, 2004, single-judge memorandum decision, the Court affirmed the October 2001 Board decision.  On March 22, 2004, the appellant filed a motion for reconsideration or, in the alternative, a panel decision.  The Court, in an April 30, 2004, single-judge order, denied reconsideration.  The Court will revoke its April 2004 single-judge order, will withdraw its March 2004 single-judge memorandum decision, and will issue this opinion in their stead.  For the reasons that follow, the Court will affirm the October 2001 Board decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from November 1943 to May 1946, including combat service in World War II. R. at 31. His service medical records (SMRs) reflect that during service he complained of earaches. *See, e.g.*, R. at 7, 13-14, 15-17, 18, 21. An SMR dated in January 1944 reflects that he had an earache in his left ear and that apparently that ear had "run in civilian life, [one] y[ea]r ago." R. at 7. The report from his discharge examination reflects no abnormalities related to his ears and 15/15 hearing bilaterally. R. at 26. A VA medical record, dated in August 1949, reflects that the appellant was treated for his ear condition and that "[n]o disease [was] found." R. at 48; *see* R. at 47-49. In September 1949, he filed a claim for, inter alia, service connection for "[l]oss of hearing"; he asserted that that condition had its onset in 1946. R. at 52. In a letter received by VA that same month, Walter Segall, M.D., informed VA that he had seen the appellant on September 23, 1947, and that he had diagnosed the appellant as having an "[i]nner ear lesion, left more than right." R. at 58. In another letter received by VA in September 1949, M.G. Farinacci, M.D., informed VA that the appellant "ha[d] been under treatment since June 1, 1946[,]" and that he "had an ear condition [that] ha[d] been progressively worse since that date." R. at 59. The appellant underwent a VA examination in April 1950; he was diagnosed as having "[d]eafness[,] partial[,] chronic . . . [b]ilateral." R. at 90; *see* R. at 84-91. The Board, in a November 1950 decision, denied service connection for, inter alia, an ear condition. R. at 132. The Board concluded that the appellant's ear condition preexisted service, noted that his discharge examination report reflected "no discernible ear abnormalities[,]" and concluded that the record did not "show that the preservice ear condition was aggravated by active service." *Id.* The Board ultimately concluded that "the evidence [wa]s insufficient to permit the grant of service connection for an ear condition." *Id.* Following the appellant's submission of additional evidence, the Board, in December 1954, again denied service connection for an ear condition. R. at 195.

In December 1988, the appellant attempted to reopen his claim for service connection for a hearing impairment. R. at 268. The Board, in a June 27, 1990, decision, denied reopening. R. at 314. In a September 4, 1990, letter addressed to the Court and received by VA on April 25, 1991, the appellant wrote: "Please be informed[] of an obvious error of fact in the BVA decision . . . [d]ated June 27, 1990. Claimant therefore files [a] motion requesting reconsideration." R. at 316.

On April 25, 1991, VA also received from the appellant correspondence that VA eventually construed as a claim to reopen his claim for service connection for hearing loss. R. at 319; *see* R. at 325; *see also* R. at 621, 622. The Board denied reconsideration of its June 1990 decision in August 1991 (*see* R. at 332, 339) and again in October 1991 (R. at 339). On September 16, 1991, the appellant filed with a VA regional office (RO) a formal claim for service connection for "[t]otal [d]eafness." R. at 335. The RO, in April 1993, determined that the appellant had not submitted new and material evidence with respect to his claim for service connection for hearing loss. R. at 378-79; *see* R. at 383, 389-92, 394, 409-13. In September 1994, VA received a letter from VA doctor Cheryl Longinotti, Coordinator of Otolaryngological Rehabilitation; she informed VA that "[d]ocumentation in [the appellant's] possession suggests [that] he was exposed to gunfire and reported to sick call complaining of earaches after such exposure" and that "due to the relationship between gunfire and hearing loss, the [appellant's] exposure is presumptive evidence that some hearing loss may have occurred in the service." R. at 430. The Board, in November 1996, denied reopening on the basis that the appellant had not submitted new and material evidence since the June 1990 BVA decision. R. at 453; *see* R. at 456. With respect to Dr. Longinotti's letter, the Board concluded that, although the letter was new, it was not material because it "relate[d] to the [appellant's then-current] level of disability, not as to whether his hearing disorder was present in service or shortly thereafter." R. at 452. The appellant appealed that decision to the Court. *See* R. at 504-06, 522-31. The Court, in an August 1998 decision, noted that the June 1990 BVA decision was "unappealed." R. at 536. The Court then reversed, on the basis of Dr. Longinotti's letter, the November 1996 Board's determination that the appellant had not submitted new and material evidence to reopen his claim for service connection for bilateral hearing loss; the Court remanded that claim to the Board for further development. R. at 536-37, 541.

The appellant underwent a VA audiological examination in October 1999 (R. at 585-88); the examiner opined that the appellant's continually deteriorating hearing was not related to any in-service exposure to excessive noise. *See* R. at 593, 617; *see also* R. at 574-75. The Board, in a February 2000 decision, citing to, inter alia, 38 U.S.C. § 1101 and 38 C.F.R. § 3.309, granted service connection on a presumptive basis for bilateral hearing loss. R. at 610, 618. The Board discounted the October 1999 examination report because the examiner "did not address the medical evidence

3

[that] indicated that the [appellant] had significant hearing loss within one year [after] service." R. at 616. The Board then determined that "[c]hronic, bilateral sensorineural hearing loss was manifest to a compensable degree within one year [after] separation." R. at 617. Explaining its conclusion, the Board noted that "Dr. Farinacci's written statements clearly show that the [appellant] had a significant hearing loss . . . only one month after his separation from service." R. at 617. The Board further noted that "Dr. Segall's written statement and the 1999 VA examination report reveal[] that the [appellant's] hearing loss was a sensorineural hearing loss" and that "[s]ubsequent reports . . . suggest an unremitting progression of hearing loss since June 1946." R. at 617. In a decision implementing the February 2000 BVA decision, the RO granted service connection for bilateral hearing loss; the RO assigned a 100% disability rating, effective April 25, 1991. R. at 621-23. The RO noted that "the first correspondence submitted by the [appellant] following the [June 1990] BVA [decision] . . . [in] which [he] specifically raised the issue of service connection for a hearing loss was a letter received on [April 25, 1991]"; the RO concluded that "[t]his is accepted as an informal claim to reopen the previously denied issue of service connection for hearing loss." R. at 622. The appellant appealed that decision with respect to the effective date assigned. R. at 641, 655, 670-71. He argued that the RO "could have possibly misinterpreted the Board . . . decision [that his] bilateral hearing loss was manifested to a compensable degree within one year [after] service." R. at 671.

The Board, in the October 2001 decision on appeal, denied an effective date prior to April 25, 1991, for the award of service connection for bilateral hearing loss. R. at 2, 4. The Board noted that "[t]he appellant's claim for entitlement to service connection for bilateral hearing loss was denied in a final June 1990 Board decision" (R. at 3) and that, "[i]n this case, service connection for bilateral hearing loss was granted based on a reopened claim filed on April 25, 1991" (R. at 4). The Board then noted that "the effective date of an award based on a reopened claim for service connection shall be the date of receipt of [the] claim, or [the] date [that] entitlement arose, whichever is later." R. at 4 (citing 38 C.F.R. § 3.400(b)(2) (2000)). The Board concluded that "[t]he currently assigned effective date is . . . based on the RO's receipt of the appellant's claim to reopen . . . filed many years after his military separation." *Id*.

On appeal, the appellant argues that the Court should reverse the decision on appeal and award him an effective date in September 1949 for his award of service connection for bilateral

4

hearing loss because "VA's failure to address the presumptive eligibility claim until [1993] . . . meant that [his] 1949 claim for service connection on a *theory* of presumptive eligibility remained open until the February 2000 grant." Appellant's Brief (Br.) at 3 (emphasis added); *see* Appellant's Br. at 4-6. In the alternative, he contends that a remand is warranted because he "submit[ted] new and material evidence during the appeal period following the final 1990 BVA decision" (Appellant's Br. at 3) and the Board failed to consider 38 C.F.R. § 3.400(q). Appellant's Br. at 7-10. He further contends that his September 4, 1990, letter to the Board constituted a Notice of Appeal (NOA) to the Court. Appellant's Br. at 7-8.

The Secretary counters that the appellant's first argument is essentially a contention "that there was clear and unmistakable error (CUE) in the 19[50] and later final decisions." Secretary's Br. at 9. Regarding the appellant's second argument, the Secretary asserts that, because "the appeal period to which [the a]ppellant refers did not turn into a grant of his benefit, but a denial of his claim, [§] 3.400(q) is inapplicable." Secretary's Br. at 10. Finally, he asserts that the Court, in its 1998 decision, foreclosed the appellant's argument that he appealed the June 1990 BVA decision (Secretary's Br. at 7-8) and that, in any event, the September 1990 letter to the BVA was a motion for BVA reconsideration and not an NOA as to the June 1990 Board decision. Secretary's Br. at 11-12. In his reply brief, the appellant asserts that his first argument does not amount to a CUE claim because he is contending that his 1949 claim for service connection for hearing loss on a presumptive basis remained pending before VA until the February 2000 Board adjudicated that claim. Reply Br. at 2-4.

## II. ANALYSIS

A Board determination of the proper effective date is a finding of fact. *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). The Court reviews questions of fact using the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4). Under this standard, a Board finding of fact may not be reversed unless the Court, in reviewing all the evidence of record, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'[i]f the [Board's] account of the evidence is plausible in light of the record viewed in its

entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Gilbert*, 1 Vet.App. at 52 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). The determination of the effective date for an award of service connection based on a reopened claim is governed by 38 U.S.C. § 5110(a), which provides:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on . . . a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a); *see* 38 C.F.R. § 3.400(q)(ii), (r) (2003).

As an initial matter, the Court notes that the appellant did not raise before the Board any of the arguments that he now raises before the Court. Nevertheless, the "Court may hear legal arguments raised for the first time with regard to a claim that is properly before the [C]ourt." *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000). In the instant case, the appellant argues, in essence, that he filed two *claims* for service connection in 1949, one for direct service connection for an ear condition and one for presumptive service connection for that same condition, and that the *claim* for presumptive service connection remained pending and unadjudicated until the February 2000 BVA decision awarded service connection for bilateral hearing loss on a presumptive basis. *See* Appellant's Br. at 4-6, 10. The Court finds that argument unpersuasive. Under 38 C.F.R. § 3.1(p), a "[c]*laim*" is defined as "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in *entitlement, to a benefit*." 38 C.F.R. § 3.1(p) (2003) (emphasis added). The benefit to which the appellant sought entitlement in September 1949 was service connection for an ear condition. R. at 52. The law makes it clear that service connection may be established "by affirmatively showing inception or aggravation during service [direct service connection] *or* through the application of statutory presumptions [presumptive service connection]." 38 C.F.R. § 3.303(a) (2003) (emphasis added). (In September 1949, that section was embodied in 38 C.F.R. § 3.63(a) (1949)). Thus, direct and presumptive service connection are, by definition, two means (i.e., two *theories*) by which to reach the same end, namely service connection. *See id*. It follows logically that the appellant, in seeking service connection for an ear condition in 1949, did not file two separate claims for that same condition, although there may have existed *two theories*

6

on which VA should have, or did, consider the *one claim*. *See Schroeder v. West*, 212 F.3d 1265, 1269-71 (Fed. Cir. 2000) (holding that, where veteran presented *claim* for service connection for "current disability" (bilateral eye condition) and such service-connection *claim* was well grounded based on in-service exposure to Agent Orange, duty to assist was triggered and VA had obligation to explore all legal *theories*, including those unknown to veteran, by which veteran might be awarded service connection for such current disability); *see also Bielby v. Brown*, 7 Vet.App. 260, 262 (1994) (Court considered claim for service connection for multiple sclerosis to be claim for both direct and presumptive service connection for that condition). Moreover, even if an appellant could file separate claims for direct and presumptive service connection for the same condition, this appellant in 1949 filed only one claim for service connection for hearing loss. *See* R. at 52.

As discussed above, the appellant's contentions in this regard all appear to be based on his notion that a *theory* of entitlement (e.g., direct service connection or presumptive service connection) is equivalent to a *claim* for benefits (e.g., service connection for hearing loss). The authority upon which the appellant relies in his motion for, inter alia, a panel decision, however, does not support the contention that any purported failure by VA to consider a *theory* of entitlement (e.g., presumptive service connection) renders a *claim* for benefits (e.g., service connection for hearing loss) unadjudicated, i.e., the appellant has not demonstrated that a purported incomplete adjudication is the equivalent of unadjudicated. Specifically, those Federal Circuit cases involve circumstances where there were *distinct claims* for two different benefits, whereas this case involves only *one claim* for one benefit, i.e., service connection for hearing loss. *See Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (restating that VA must apply all relevant laws and regulations to determine all potential "claims" raised by evidence; in that case, *claim for rating of total disability based on individual unemployability* (TDIU) was adjudicated but question remained as to whether VA had "sympathetically read [that appellant's] filings prior to June 24, 1994[ (the effective date of his TDIU rating)], [to] determin[e] whether [that appellant had] made an informal *claim for secondary service connection* [*for a psychiatric disorder*]" (emphasis added)); *Roberson v. Principi*, 251 F.3d 1378, 1383-84 (Fed. Cir. 2001) (VA must "determine all potential *claims* raised by the evidence, applying all relevant laws and regulations, regardless of whether the *claim* is specifically labeled as a [certain] *claim*" (emphasis added); in that case, VA, in adjudicating appellant's *service-connection claim*, had

failed to recognize that *TDIU claim* also had been raised); *cf. Szemraj v. Principi*, 357 F.3d 1370, 1375-76 (Fed. Cir. 2004) (in context of CUE case (i.e., where denial of claim had not been appealed), stating that *Roberson*, *supra*, does not require VA, inter alia, to develop evidence on appellant's *theory* of entitlement, rather it requires VA to determine all "*claims*" presented (emphasis added)). The Court therefore concludes that, even if the 1950 Board erred in not considering the presumptive-service-connection *theory* for hearing loss, there existed no separate presumptive-service-connection *claim* that could have remained pending.

Consequently, because there are "only two exceptions to the rule of finality," the appellant was left with only two means by which to overcome the finality of the November 1950 Board decision: (1) reopening based on the presentation of new and material evidence or (2) CUE. *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) (overruling *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), and its "'grave procedural error'" construct). Of the two, only the latter could conceivably result in an earlier effective date for the award of service connection for bilateral hearing loss because it is well established that the effective date for an award based on a claim to reopen is generally the date of the claim to reopen. *See Flash v. Brown*, 8 Vet.App. 332, 340 (1995) ("[W]hen a claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen."); *see also Sears v. Principi*, 16 Vet.App. 244, 246-50 (2002), *aff'd*, 349 F.3d 1326 (Fed. Cir. 2003). The appellant has made it clear that the instant appeal is not predicated upon CUE. *See* Reply Br. at 2-4. In any event, based on the foregoing, the Court concludes that the November 1950 Board's denial of service connection for an ear condition did not leave open an unadjudicated claim for service connection for that same condition on a presumptive basis. If the appellant believes that the November 1950 Board erred with respect to its consideration or lack thereof regarding presumptive service connection for an ear condition, he is free to attack that decision on the basis of CUE.

Turning to the appellant's other arguments, with respect to the 1990 Board decision, notwithstanding the appellant's argument that his September 4, 1990, letter constituted an NOA as to that decision, the Court notes that, in its 1998 decision, the Court deemed the June 1990 Board decision "unappealed." R. at 536. Accordingly, the Court need not consider the issue of whether the appellant appealed the June 1990 Board decision. *See Browder v. Brown*, 5 Vet.App. 268, 270

(1993) (appellate courts generally will not reconsider issues that already have been decided in previous appeal of same case). In any event, the appellant's argument must fail. In this regard, the appellant has not averred or demonstrated that any such purported NOA could have satisfied the NOA-filing requirements. First, the appellant has not demonstrated that the purported NOA indeed was received by the Court in 1990. *See* 38 U.S.C. § 7266(a); *see also* U.S. VET. APP. R. 28(a)(5) (appellant's brief must contain "an argument . . . and the reasons for [them], with citations to the authorities . . . relied on"). To the contrary, the only "received" stamp on the letter is what appears to be an April 25, 1991, date-stamp by VA. *See* R. at 317. Further, it is not clear with what VA entity the document may have been filed (i.e., whether the document may have been filed with the same RO from which his claim originated) and, in any event, the document does not appear to have been filed with such an RO within the 120-day judicial-appeal period (i.e., it was received on April 25, 1991, which was 302 days after the date that notice was mailed to him of the June 1990 BVA decision). *See* R. at 316-17; *Jaquay v. Principi*, 304 F.3d 1276, 1287-89 (Fed. Cir. 2002) (en banc). Finally, the appellant has not demonstrated that equitable tolling could be available under the tolling law applicable to this Court. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey v. Principi*, 351 F.3d 1381, 1385 (Fed. Cir. 2003) (as to filing defective pleading during statutory period); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002) (same).

Finally, the appellant's argument regarding 38 C.F.R. § 3.400(q)(1)(i) is unavailing. In this regard, the Court notes that it appears that that regulation applies to only the one-year period in which an appellant may appeal an RO decision to the BVA–not to the 120-day period in which an appellant may appeal a final BVA decision to the Court. *See* 38 C.F.R. § 3.400(q)(1)(i) (2003) (referring to 38 C.F.R. §§ 20.1103, 20.1104, and 20.1304(b)(1), all of which address appeals of RO decisions to BVA). Notwithstanding the foregoing, even if the Court were to conclude that 38 C.F.R. § 3.400(q)(1)(i) does apply to the 120-day period in which an appellant may appeal a final Board decision to the Court, in the instant case, the Court, in its 1998 decision, concluded that new and material evidence was not submitted until September 1994 (*see* R. at 536-37); that determination will not be reconsidered now (*see Browder*, 5 Vet.App. at 270). Consequently, in light of the fact that the RO had denied reopening in April 1993, the appellant submitted new and material evidence after the one-year appeal period already had run. Moreover, even assuming that the September 1994

9

new and material evidence was submitted within one year after an RO or Board decision, the April 25, 1991, effective date currently assigned for his award of service connection for bilateral hearing loss is commensurate with the application of 38 C.F.R. § 3.400(q)(1)(i) because the appellant already has been awarded an effective date in April 1991–"as though the [April 1993 RO] decision had not been rendered."  38 C.F.R. § 3.400(q)(1)(i).

Accordingly, the Court concludes that the appellant has not demonstrated that the Board's denial of an effective date prior to April 25, 1991, was clearly erroneous.  *See Gilbert*, 1 Vet.App. at 53; *see also* 38 U.S.C. § 5110(a); *Flash*, 8 Vet.App. at 340 (when claim to reopen is successful and benefit sought is awarded upon readjudication, effective date is date of claim to reopen); 38 C.F.R. § 3.400(q)(1)(ii).

### III.  CONCLUSION

The Court's April 30, 2004, single-judge order is revoked, and the Court's March 3, 2004, single-judge memorandum decision is withdrawn.  Upon consideration of the foregoing analysis, the parties' pleadings, and the record on appeal, the October 3, 2001, BVA decision is AFFIRMED.