# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-7589

ROBERT H. JOHNSON, APPELLANT,

v.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 26, 2025)

*Robert W. Legg*, of Arlington, Virginia, for the appellant.

*Richard J. Hipolit,* Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Abhinav Goel*, Acting Deputy Chief Counsel; and *Courtland D. McEneny Ingraham,* all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, TOTH, and JAQUITH, *Judges.*

BARTLEY, *Judge*: In 2016, veteran Robert H. Johnson filed claims for service connection for diabetes mellitus, bilateral lower extremity peripheral neuropathy, and hypertension, all based on herbicide exposure. After a VA regional office (RO) found that he was not exposed to herbicides, Mr. Johnson appealed those claims to the Board of Veterans' Appeals (Board). While the Board appeal was pending, Congress passed the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxics Act of 2022 (PACT Act), which provided a presumption of herbicide exposure for certain veterans, including Mr. Johnson. He then filed supplemental claims for the same disabilities under the PACT Act. The RO in March 2023 granted Mr. Johnson's supplemental claims for those disabilities. In a December 11, 2023, decision, the Board dismissed Mr. Johnson's appeal, concluding that the RO's grants of service connection under the PACT Act resolved the Board appeal.

Mr. Johnson timely appealed to this Court and we have jurisdiction to review the Board decision. *See* 38 U.S.C. §§ 7252(a), 7266(a). This matter was referred to a panel of this Court to address the propriety of the Board's conclusion that the appeal before it, based on the veteran's 2016 pre-PACT Act claims, was moot. Because Mr. Johnson appealed his pre-PACT-Act claims to the Board seeking one review on appeal, and his later PACT Act claims were granted by the

RO, a lower tribunal, and advanced in a different claim stream based on a liberalizing law while his Board appeal was pending, we reverse the Board's conclusion that the appeal is moot. The RO's grants of service connection under the PACT Act did not resolve the pending Board appeal. Therefore, we will set aside the December 2023 Board decision and remand the appeal for the Board to process the pre-PACT Act claims to completion.

## I. BACKGROUND

### A. Mr. Johnson's Pre-PACT Act Claim Stream

Mr. Johnson served on active duty in the U.S. Marine Corps from September 1972 to July 1974. Record (R.) at 4197. Between March and September 1973, he served as a security guard at Nam Phong Royal Thai Air Force Base (RTAFB). R. at 4106, 4111.

In May 2016, Mr. Johnson filed claims for service connection for diabetes, bilateral lower extremity peripheral neuropathy, and hypertension, asserting exposure to Agent Orange. R. at 4199-202; *see* R. at 4208-10 (July 2015 intent to file form). In July 2016, he stated that he served as a security guard at Nam Phong RTAFB and "patrolled the perimeter every night [he] was there." R. at 3976; *see* R. at 3970-72 (photographs submitted in October 2016).

In February 2017, the RO denied the claims, finding that Mr. Johnson did not serve in the Republic of Vietnam and there was no evidence of herbicide exposure during service. R. at 3823-27. Following a March 2017 request to reopen the claims, *see* R. at 3660, the RO in March 2017 again denied the claims, R. at 3659-62.

In March 2018, Mr. Johnson filed a Notice of Disagreement (NOD). R. at 3641-42. At that time, he asserted that his hypertension was secondary to diabetes. R. at 3642. In April 2020, Mr. Johnson timely perfected the appeal to the Board. R. at 3127-28; *see* R. at 3348-80 (March 2020 Statement of the Case). In January 2021, Mr. Johnson argued that service connection was warranted because "VA has recognized that herbicides were used extensively in Thailand during the Vietnam War." R. at 3047 (citing *Parseeya-Picchione v. McDonald*, 28 Vet.App. 171, 176-77 (2016); VA ADJUDICATION PROCEDURES MANUAL REWRITE 2010 (M21-1 MR)); *see* R. at 3048 (arguing that, based on the M21-1MR and the evidence submitted, he had "established . . . in-service exposure").

2

### B. The PACT Act

On August 10, 2022, the PACT Act became law. Pub. L. 117-168, 136 Stat. 1759. The PACT Act is wide-reaching legislation, expanding VA health care and compensation benefits for veterans exposed to burn pits and other toxic substances.[1] One important feature of the PACT Act is that it expanded the statutory presumption of herbicide exposure (38 U.S.C. § 1116) beyond veterans who served in the Republic of Vietnam. Pub. L. 117-168, § 403; *see Updating VA Adjudication Regulations for Disability or Death Benefit Claims Related to Exposure to Certain Herbicide Agents*, 89 Fed. Reg. 9803, 9804 (Feb. 12, 2024) (proposed rule). Most notable here, the expanded presumption covered veterans who served "in Thailand at any United States or Royal Thai base during the period beginning on January 9, 1962, and ending on June 30, 1976, without regard to where on the base the veteran was located or what military job specialty the veteran performed." Pub. L. 117-168, § 403 (adding 38 U.S.C. § 1116(d)(2)); *see* 38 U.S.C. § 1116(d)(2) (effective Aug. 10, 2022); *see also* 89 Fed. Reg. at 9806-07 (proposing a corresponding regulatory change to 38 C.F.R. § 3.307).[2]

### C. Mr. Johnson's PACT Act Claim Stream

After passage of the PACT Act, Mr. Johnson, in October 2022, while his diabetes, peripheral neuropathy, and hypertension claims were on appeal at the Board, filed supplemental claims for the same conditions, specifically referencing the PACT Act. R. at 1609-11. In March 2023, VA personnel completed a toxic exposure risk activity memorandum confirming that Mr. Johnson qualified for a presumption of herbicide exposure based on his service in Thailand. R. at 239-41. Later in March 2023, the RO granted service connection for diabetes, bilateral lower extremity diabetic peripheral neuropathy, and hypertension based on the PACT Act's expanded herbicide-exposure presumption. R. at 228-37. The RO assigned effective dates of August 10, 2022, commensurate with enactment of the PACT Act. *Id.*; *see* 38 C.F.R. § 3.114 (2024). In May 2023, Mr. Johnson appealed to the Board, seeking earlier effective dates for all disabilities and

---

[1] *See, e.g.*, *The PACT Act and Your VA Benefits*, available at https://www.va.gov/resources/the-pact-act-and-your-va-benefits/ (last accessed Mar. 20, 2025).

[2] In *Military-Veterans Advocacy Inc. v. Sec'y of Veterans Affairs*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) dismissed that portion of a rulemaking challenge seeking to address VA's practices outlined in the M21-1 regarding claims of exposure at RTAFB because the PACT Act provided the "full relief" requested by the petitioner. 63 F.4th 935, 943 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 682 (2024).

arguing that he had a pending Board appeal regarding service connection based on herbicide exposure. R. at 162-63.

### D. Board Decision on Appeal

In December 2023, the Board dismissed as moot the pending pre-PACT Act appeal regarding service connection for diabetes, bilateral lower extremity peripheral neuropathy, and hypertension. R. at 5-6. The Board stated that the claims had been granted by the RO in March 2023 and, thus, "there remain no allegations of fact or law for appellate consideration on the claim[s]." R. at 6 (citing 38 U.S.C. § 7105; 38 C.F.R. § 19.55). This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Johnson argues that the Board erred in dismissing the appeal as moot. He frames the issue as whether there are non-moot pending claims based on herbicide exposure on a non-presumptive basis. Appellant's Brief (Br.) at 7-8. Thus, and because he asserts that the Board had jurisdiction over the question of herbicide exposure, he argues that the Board failed to satisfy its obligation to fully adjudicate that issue. *Id*. He asserts prejudice in the Board's error because without Board review of the RO's 2017 pre-PACT Act findings of no evidence of direct herbicide exposure, those findings would be final and binding on subsequent adjudicators. *Id*. at 9.

The Secretary argues that the Board was correct to dismiss the appeal because the benefit sought by Mr. Johnson—service connection—was granted by the RO in the March 2023 decision. He disagrees with Mr. Johnson's contentions, arguing that multiple theories of service connection pertaining to the same benefit are part of the same claim. Secretary's Br. at 6 (citing *Roebuck v. Nicholson*, 20 Vet.App. 307, 313 (2006)). He analogizes Mr. Johnson's case to *Aviles-Rivera v. McDonough*, No. 2022-2084, 2024 WL 2952689 (Fed. Cir. June 12, 2024) (nonprecedential per curiam order) (*Aviles-Rivera II*), *vacating and dismissing as moot* 35 Vet.App. 268 (2022) (*Aviles-Rivera I*), asserting that the Federal Circuit's dismissal based on mootness in *Aviles-Rivera II* is "instructive and persuasive." Secretary's Br. at 7. He characterizes Mr. Johnson's arguments as a mere attempt to obtain earlier effective dates of service connection and argues that the Board lacked jurisdiction to address the downstream issue of the appropriate effective date. *Id*. at 8 (citing *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997); *Holland v. Gober*, 10 Vet.App. 443, 445 (1997)). He notes that Mr. Johnson appealed the March 2023 RO decision to the Board, seeking earlier effective dates for the disabilities that were granted under the PACT Act.

4

On March 12, 2025, the Secretary filed a *Solze* notice with the Court that on February 20, 2025, the Board remanded the veteran's earlier-effective-date claims for further development. *See Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013) ("In all cases before this Court, the parties are under a duty to notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision.").

## III. ANALYSIS

A. *Solze* notice of VA proceedings occurring subsequent to issuance of the
Board decision on appeal.

Because the February 2025 Board remand order that was the subject of the *Solze* notice post-dates the December 2023 Board decision we are charged with reviewing, we cannot rely on it to "make new findings of fact or to make substantive decisions about whether the Board erred" in December 2023 when it dismissed Mr. Johnson's appeal. *Phillips v. McDonough*, 37 Vet.App. 394, 398 (2024) (citing *Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021)). Thus, we address that Board order here only to confirm that a live case or controversy is still before us. *Id.*; *see Philbrook v. Wilkie*, 32 Vet.App. 342, 345 (2020) ("As a jurisdictional requirement, the Court has an independent duty to ensure that a case or controversy still exists.") (citing *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019)), *rev'd on other grounds sub. nom Philbrook v. McDonough*, 15 F.4th 1117 (Fed. Cir. 2021).

In making this determination, the Court first notes that the February 2025 Board remand is not a final decision that granted or denied Mr. Johnson benefits. *See, e.g.*, *Mote v. Wilkie*, 976 F.3d 1337, 1341-42 (Fed. Cir. 2020) (noting that a final Board decision is one that grants or denies benefits and characterizing a Board remand order as being "en route to an ultimate Board decision"); *Stiles v. McDonough*, 37 Vet.App. 328, 332 (2024) ("[R]emand orders are neither final nor adverse to a veteran."). As noted, the February 2025 Board remand ordered further development related to Mr. Johnson's earlier effective date claim. Relatedly, the Board remand order did not provide the relief Mr. Johnson seeks. As discussed below, *see infra* at III.D., Mr. Johnson appealed to the Board in January 2021 to achieve service-connected disability compensation for three disabilities, based on the extensive evidence of direct herbicide exposure he submitted, R. at 162. The February 2025 Board remand for further development plainly did not provide Mr. Johnson the full relief that he sought. Further as to mootness, this Court should dismiss an appeal as moot "only if it is impossible for us to grant 'any effectual relief whatever.'" *Philbrook*

32 Vet.App. at 345 (quoting *Mission Product Holdings, Inc. v. Tempnology*, 587 U.S. 370, 377 (2019) (citing 13C C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3533.3, p.2 (3d ed. 2008) ("[A] case is not moot so long as a claim for monetary relief survives.")))). Thus, the Court concludes that a live case or controversy remains.

### B. The March 2023 RO grants of service connection under the PACT Act, by a lower tribunal and occurring in a second claim stream, did not resolve the pending pre-PACT-Act Board appeal.

To set the stage, there are two distinct claim streams in Mr. Johnson's case. A pre-PACT Act claim stream began in May 2016 based on the veteran's assertion of herbicide exposure while serving on an RTAFB; in that claim stream the veteran appealed the RO's denials of service connection to the Board by filing an NOD in March 2018. A separate PACT Act claim stream began in October 2022, when Mr. Johnson filed service-connection claims based on the liberalizing provision of the PACT Act that established a presumption that certain veterans who served on RTAFBs were exposed to herbicides; in March 2023 the RO, based on PACT Act provisions, granted service connection for the relevant disabilities. The Secretary argues that the RO's March 2023 service-connection grants under the PACT Act resolved the live pre-PACT Act claims that were pending on appeal before the Board and not yet the subject of a Board decision.

Caselaw from early in the Court's history firmly establishes that the RO, as a lower tribunal, cannot review a decision of the Board, a higher tribunal. *See, e.g.*, *Smith v. Brown*, 35 F.3d 1516, 1526 (Fed. Cir. 1994), *superseded on other grounds by* 38 U.S.C. § 7111. As a corollary, our caselaw is also clear that once a claim is in appellate status, "[the] appeal can only be resolved by an appellate body, i.e., the Board." *Jones v. Shinseki*, 23 Vet.App. 122, 125 (2009), *aff'd on other grounds*, 619 F.3d 1368 (Fed. Cir. 2010). And further, once a claim has been appealed to the Board but not finally resolved, a subsequent RO decision in a separate claim stream cannot resolve the pending Board appeal. *Bailey v. Wilkie*, 33 Vet.App. 188, 203-04 (2021); *Warren v. McDonald*, 28 Vet.App. 214, 221 (2016); *see Terry v. McDonough*, 37 Vet.App. 1, 4 (2023); *Myers v. Principi*, 16 Vet.App. 228, 235-36 (2002); *see also Harper v. Wilkie*, 30 Vet.App. 356, 361 (2018) (noting VA's acknowledgment that "the RO cannot remove a matter from appellate status"). We address some of these cases in more depth below.

In *Warren*, the RO denied service connection for sleep apnea and the veteran appealed that decision to the Board; while the Board appeal was pending, the RO in a later separate claim stream granted service connection for sleep apnea. 28 Vet.App. at 215-16. When the Board adjudicated

the appealed claim, it acknowledged the RO's service-connection grant and recharacterized the issue as entitlement to an earlier effective date for sleep apnea. *Id*. at 217. But this Court held that the Board erred by recharacterizing the claim. We concluded that when a Board appeal has been filed and is pending, the RO's later grant of service connection in a separate claim stream could not resolve the sleep apnea appeal properly within the Board's jurisdiction. *Id*. at 221 ("The decision of the lower adjudicative body, the RO, cannot finally decide an issue already on appeal to the Board, the higher administrative appellate body." (citing *Jones*, 23 Vet.App. at 125; *Juarez v. Peake*, 21 Vet.App. 537, 543 (2008))); *see also Terry*, 37 Vet.App. at 4-5. Therefore, in *Warren* we remanded for the Board to address the merits of the earlier service-connection claim. 28 Vet.App. at 221-22.

And again in *Bailey*, the veteran argued to this Court that the Board erred while adjudicating a claim for an increased disability evaluation for prostate cancer by failing to adjudicate a reasonably raised claim for service connection for lymphedema as a complication of the veteran's cancer treatment. 33 Vet.App. at 197. We agreed, but in addressing the proper remedy we had to consider whether the secondary claim was moot due to an intervening RO grant of service connection for lymphedema in a separate claim stream. *Id*. at 203-04. Relying on *Warren*, we held that a remand of the service-connection claim was proper because "the RO decision could not and did not divest the Board of jurisdiction over the veteran's initial appeal." *Id*. at 204 (citing *Warren*, 28 Vet.App. at 221).

*Warren* and *Bailey* have a salient factor in common with Mr. Johnson's case—they deal with situations involving two distinct claim streams, with the original claim stream still pending final Board adjudication. In both *Warren* and *Bailey*, the Board failed to acknowledge and adjudicate a pending service-connection appeal properly within its power to review. *See Bailey*, 33 Vet.App. at 203; *Warren*, 28 Vet.App. at 220. Thus, in both cases, we held that remand for the Board to adjudicate the appealed claims to completion was required. *See Bailey*, 33 Vet.App. at 204 (remanding to "preserve[] the possibility of an earlier effective date and safeguard[] against any preclusive effect of the later RO decision"); *Warren*, 28 Vet.App. at 221 (remanding because the later grant by the RO "was only able to grant service connection" effective the date of the second claim). Although the Board did not overlook Mr. Johnson's pending pre-PACT Act claims, its misunderstanding that the RO's 2023 decision could moot the pending Board appeal from a

7

different and earlier still-pending claim stream led to the same problem that arose in *Warren* and *Bailey*. Without doubt, then, the Court must decide Mr. Johnson's case similarly.

Thus, as in *Bailey* and *Warren*, the Court concludes that remand is the proper remedy here, so that the Board may process Mr. Johnson's appeal in the pre-PACT Act claim stream to completion. *See Bailey*, 33 Vet.App. at 204; *Warren*, 28 Vet.App. at 221. That Mr. Johnson appealed to the Board the issue of the proper effective date assigned by the RO in a different claim stream does not affect our conclusion because the RO decision cannot resolve a Board appeal and the "veteran should not be punished for attempting to preserve the earliest possible effective date for his claims," especially in the distinct-claim-streams context. *Bailey*, 33 Vet.App at 204 n.9 (citing *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009)); *see Comer*, 552 F.3d at 1369 ("The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim.").[3]

C. The Board overlooked the significance of the PACT Act as a liberalizing law.

Further supporting the Court's conclusion is the very nature of Mr. Johnson's second claim stream in this case. That claim stream was directly generated by passage of the PACT Act, R. at 1609-11, momentous legislation that, among other things, significantly expanded eligibility for VA healthcare and benefits for veterans with toxic exposures and those with Vietnam, Gulf War, and post-9/11 service. Although in 2016 Mr. Johnson filed claims for service connection for the disabilities at issue in this case that remain pending on appeal, almost immediately after the PACT Act became effective the veteran filed under the new law.[4]

When a claimant raises multiple theories to establish service connection, generally all theories of service connection are part of the same claim. *See Schroeder v. West*, 212 F.3d 1265, 1269-70 (Fed. Cir. 2000); *Roebuck*, 20 Vet.App. at 313 ("[A]lthough there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim."). For example, it generally would not matter whether a veteran attempts to establish service-incurrence through

---

[3] *Accord Green v. McDonough*, 37 Vet.App. 127, 138 (2024) (holding that an intervening RO grant of entitlement to a total disability evaluation based on individual unemployability (TDIU) did not moot the veteran's TDIU appeal stemming from an earlier claim stream); *Harper*, 30 Vet.App. at 360-62 (holding that an intervening RO grant of TDIU did not terminate the veteran's TDIU appeal stemming from an earlier claim stream).

[4] Although the first claim stream in this case is subject to less restrictive legacy evidence-submission rules and the second claim stream is subject to Veterans Appeals Improvement and Modernization Act rules, the parties submitted no argument related to this distinction and the Court will not address that issue further.

8

evidence of direct herbicide exposure or presumed exposure. *See Bingham v. Principi*, 18 Vet.App. 470, 474 (2004) ("[D]irect and presumptive service connection are, by definition, two means (i.e., two *theories*) by which to reach the same end, namely service connection."), *aff'd*, 412 F.3d 1346 (Fed. Cir. 2005).[5] As we have said: "A claimant need only succeed on one theory of the claim in order to prevail on the underlying claim; therefore, if the Board were to grant service connection based on the remaining theory, this Court's adjudication of any other theories would result in a waste of judicial resources." *Roebuck*, 20 Vet.App. at 315. However, *Schroeder*, *Bingham*, *Roebuck* and like cases are readily distinguishable from Mr. Johnson's situation.

*Roebuck* addressed a unique situation where the Board sua sponte bifurcated a single claim of service connection for a lung disorder and issued separate appellate decisions, separated by 10 months, as to the veteran's separate theories of service connection. 20 Vet.App. at 310-11. The ultimate question in *Roebuck* was whether the Court had jurisdiction to review both Board decisions when the veteran had timely appealed only the second Board decision, and the Court answered that question in the affirmative. *Id*. at 312-17.[6] Thus, in *Roebuck*, the veteran raised two theories of service connection within a single claim stream, which the Board unilaterally bifurcated. And *Schroeder* and *Bingham* likewise dealt with a single claim stream. *See Schroeder*, 212 F.3d at 1267-68; *Bingham*, 18 Vet.App. at 474, However, Mr. Johnson's case is distinguishable because he raised two separate theories of entitlement in separate claim streams. And, significantly, one of those theories was based on the new PACT Act.

The PACT Act, among other things and as relevant to Mr. Johnson, expanded the previous long-standing statutory herbicide-exposure presumption to certain veterans serving outside the Republic of Vietnam. *See* 89 Fed. Reg. at 9804. A legal provision that creates "a presumption that, when certain conditions are met, a crucial element of a service-connection case is presumed proved" is a liberalizing law. *Ortiz v. McDonough*, 6 F.4th 1267, 1281 (Fed. Cir. 2021). This is so

---

[5] To the extent that Mr. Johnson appears to argue that the service-incurrence question, as a "threshold issue," is appealable divorced from a claim for service connection, Appellant's Br. at 7, we disagree. *See Massie v. Shinseki*, 25 Vet.App. 123, 126-27 (2011) ("[T]his Court's jurisdiction flows from the Board's decision on a particular claim, not on a particular argument or theory offered in support of that claim." (citing *Robinson v. Peake*, 21 Vet.App. 545, 550-51 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Roebuck*, 20 Vet.App. at 313)).

[6] In *Tyrues v. Shinseki*, the en banc Court, relying on *Roebuck*'s unique circumstances, limited *Roebuck*'s holding "to the situation where the Board, in its decision denying one theory, specifically states that the Board will be issuing, without a remand to the RO, a second decision on another theory of the same claim." 23 Vet.App. 166, 173 (2009) (en banc), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011), *vacated*, 565 U.S. 802 (2011), *reinstated as modified en banc*, 26 Vet.App. 31 (2012), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013).

when the new presumption "eliminated a crucial, concrete component of what was required for the veteran's affirmative case to establish entitlement." *Id.* at 1280. A liberalizing law is "one [that brings] about a substantive change in the law creating a new and different entitlement to a benefit." *Spencer v. Brown*, 17 F.3d 368, 372 (Fed. Cir. 1994) (*Spencer II*), *aff'ing* 4 Vet.App. 283 (1993) (*Spencer I*). The new herbicide-exposure presumption covering veterans who served on an RTAFB during a particular timeframe eliminated the need for Mr. Johnson to present affirmative evidence of direct exposure to establish the in-service element of service connection, the crucial component the RO found missing from his initial claim for benefits. *See* R. at 3659-62. Therefore, the PACT Act clearly is a liberalizing law as to the expanded presumptions regarding herbicide exposure. *See Ortiz*, 6 F.4th at 1280.[7]

This is significant because this Court has previously held that claims based on liberalizing laws are "separate and distinct" from prior claims for the same disability, even when the claims depend upon the same factual basis. *Spencer I*, 4 Vet.App. at 288-89. As *Spencer* indicated, an "applicant's latter claim, asserting rights which did not exist at the time of the prior claim, is necessarily a different claim." *Id.* The Federal Circuit agreed with our analysis, concluding that a new original claim includes "a new basis of entitlement to a claimed benefit as the result of an intervening change in law or regulation." *Spencer II*, 17 F.3d at 373; *see Routen v. West*, 142 F.3d 1434, 1442 (Fed. Cir. 1998) (stating that a new original claim existed with "an intervening change in law providing a new cause of action"); *see also Ortiz*, 6 F.4th at 1277-79 (discussing *Routen*, *Spencer II*, and *Spencer I*).

Unlike the veterans in *Spencer* and *Routen*, who both sought de novo readjudication of previously denied, final claims on the basis of what they believed were liberalizing laws, *see Ortiz*, 6 F.4th at 1277, Mr. Johnson filed his PACT Act claims while his pre-PACT Act claims were live and pending before the Board. However, that difference in posture between Mr. Johnson's case and *Spencer* and *Routen* does not alter the conclusion that claims based on liberalizing laws, such as the PACT Act as it pertains to Mr. Johnson, are "separate and distinct" claims from pre-PACT Act claims. *See Spencer I*, 4 Vet.App. at 288-89; *see also Routen*, 142 F.3d at 1442; *Spencer II*, 17 F.3d at 373. The operative fact is that Mr. Johnson's PACT Act claims hinged on a new basis of entitlement not available when he filed his initial claims, thus making the PACT Act claims

---

[7] Relatedly, when in March 2023 the RO granted service connection, it indicated that the PACT Act was liberalizing. R. at 230 (citing 38 C.F.R. § 3.114).

separate and distinct from his earlier, yet still pending, claims. The RO seemed to have realized as much when it proceeded to adjudicate Mr. Johnson's PACT Act claims despite his pre-PACT Act claims for the same disabilities then pending before the Board.

In concluding that *Spencer* and related cases support our conclusion that Mr. Johnson's later-filed PACT Act claims were separate and distinct from his earlier-filed 2016 claims, and that the Board therefore erred in dismissing the appeal of his pre-PACT Act earlier-filed claims, we note that it is well settled that the Board must consider all issues within a claim, either raised by the claimant or reasonably raised by the record. *Robinson*, 21 Vet.App. at 552; *see Schroeder*, 212 F.3d at 1271. Here, although the question of Mr. Johnson's herbicide exposure and entitlement to service connection based on the pre-PACT Act state of the law was properly before the Board and had yet to be adjudicated, the Board did not address those issues. It concluded instead that the issues before it were moot. Having determined that the RO adjudicated under liberalizing PACT Act provisions claims that were necessarily separate and distinct from those then-pending before the Board, we must conclude that the Board's mootness determination was in error. We therefore reverse that determination.

### D. The Secretary's effective date argument is not persuasive.

We now address the Secretary's secondary argument. He argues that the only outstanding issue that remains, since service connection has been granted under the PACT Act, is the downstream issue of the effective date of Mr. Johnson's service-connected disability benefits. Secretary's Br. at 8-11. Mr. Johnson counters the Secretary's characterization and argues that it was error for the Board to fail to adjudicate to completion his 2016 claims for direct service connection based on herbicide exposure under pre-PACT Act law. Appellant's Reply Br. at 1-4.

The Board noted that the RO in March 2023 granted service connection for diabetes mellitus, bilateral lower extremity peripheral neuropathy, and hypertension; indicated that it may dismiss an appeal that fails to allege specific error of fact or law; and determined that, because the RO had granted service connection, there "remain[ed] no allegations of error of fact or law for appellate consideration." R. at 6. Because this conclusion is erroneous, the Court cannot allow it to stand.

Before the Board Mr. Johnson argued that his service personnel records demonstrated that he spent significant time in service as a security guard at Nam Phong RTAFB. R. at 3046-48 (Statement in Lieu of VA Form 646). He argued that he had submitted color photographs of

11

himself on that base with the ground appearing brown against the green jungle background, thus showing "chemical burn from the use of herbicides." R. at 3047; *see* R. at 3970-72. He argued that VA in the M21-1MR recognized that herbicides were used extensively in Thailand during the Vietnam War, R. at 3047 (citing M21-1MR, pt. IV. ii. 2, ch. l0.q), a provision, he noted, this Court has previously held was substantive law, *id*. (citing *Parseeya-Picchione*, 28 Vet.App. at 176-77). And he argued that the M21-1MR provision clearly provided that those who served as security personnel at RTAFBs were exposed to herbicides. *Id*. He concluded that this evidence affirmatively demonstrated direct herbicide exposure and that service connection was warranted for the disabilities as presumptively related to that herbicide exposure. R. at 3048.

Citing pre-PACT Act authority to the Board, the veteran raised arguments concerning his exposure to herbicides and entitlement to service connection under then-existing legal provisions, specifying errors of fact and law. R. at 3047. Those arguments remain undecided and are not moot. The Board in its December 2023 decision did not address these arguments, *see* R. at 5-6, and the RO in 2023 did not do so either, *see* R. at 228-37. Thus, the Board's perfunctory conclusions that the veteran failed to allege specific error of fact or law and that there remained no allegations of error of fact or law for appellate consideration are reversed as clear error. *See* 38 U.S.C. § 7261(a)(4).

Ultimately, the Court rejects the Secretary's argument that because service connection was granted under the PACT Act, only a downstream effective date issue remains. Mr. Johnson raised arguments regarding his entitlement under pre-PACT Act law and has not yet received one review on appeal, i.e., a Board decision, in response to the evidence and arguments he raised concerning his service at Nam Phong RTAFB and entitlement to service connection under the body of law extant at that time. And the aim of the Board adjudication that he is entitled to, since he filed an appeal to the Board, would be to determine whether he satisfies the three requirements for service connection under the legal authority applicable during the pendency of his claim and appeal; those determinations indisputably relate to entitlement to service connection.

Moreover, were we to affirm the Board's dismissal and follow the Secretary's argument to its logical conclusion, Mr. Johnson (and veterans similarly situated) would be required to initiate an appeal[8] to have VA address the exact service-connection issue—direct service connection based

---

[8] As noted, Mr. Johnson challenged his effective date of benefits, and that issue remains pending.

on herbicide exposure under pre-PACT Act law—that was before the Board in December 2023 when it dismissed the appeal. Thus, accepting the Secretary's characterization of Mr. Johnson's claim for service connection as a claim for an earlier effective date would result in unnecessary delay, erect hurdles in veterans' paths, and result in a waste of administrative resources. *Accord Warren*, 28 Vet.App. at 221. For the above reasons, the Court rejects the Secretary's argument that Mr. Johnson's appeal is primarily seeking to establish an earlier effective date of benefits.

### E. The Secretary overstates *Aviles-Rivera II*.

The Secretary, in further support of his argument that the veteran's original service-connection claims became moot once the RO granted service connection under the PACT Act while the pre-PACT Act claims were pending, cites *Aviles-Rivera II*, a nonprecedential dismissal by the Federal Circuit. The Secretary's reliance is misplaced, principally because there is simply nothing in the dismissal order to rely on, and certainly no analysis of the effect of the different claim streams, *Spencer*, liberalizing laws, and the power of an RO decision from a different claim stream to moot out a Board appeal filed prior to the liberalizing law.

In *Aviles-Rivera II*, the veteran appealed our decision affirming the Board's denial of service connection for hypertension. *See Aviles-Rivera I*, 35 Vet.App. at 281. After the veteran filed supplemental claims with the RO, which granted service connection, the Federal Circuit sought additional briefing addressing several issues including mootness. In a four-sentence nonprecedential order, the Federal Circuit stated: "Having considered the parties' supplemental briefing and the intervening proceedings concerning Mr. Aviles-Rivera's supplemental claims before the VA, we determine that this appeal is moot." *Aviles-Rivera II*, 2024 WL 2952689, at *1.

The Federal Circuit has cautioned against "plac[ing] considerable weight upon[]" its nonprecedential orders:

> We remind counsel and the [veterans] court that nonprecedential opinions . . . do not represent the considered view of law applicable in other cases. Nonprecedential orders and opinions are used in summary dispositions of cases in which a full precedential opinion is not considered necessary. . . .
>
> They are nonprecedential for a reason—while the decision itself receives due care, as do all cases before us, the explanation given in summary disposition does not necessarily contain a full recitation of all the relevant facts and legal authority. The opinion or order is primarily for the benefit of the parties. It is error to assume that a nonprecedential order or opinion provides support for a particular position or reflects a new or changed view held by this court.

13

*Hamilton v. Brown*, 39 F.3d 1574, 1581 (Fed. Cir. 1994). Although the Federal Circuit's admonition came before it allowed litigants to cite to nonprecedential authority, *see* FED. R. APP. PROC. 32.1 (effective Dec. 1, 2006), it maintains that nonprecedential or unpublished dispositions may only be considered for guidance or persuasive reasoning. FED. CIR. R. 32.1(d) (effective Dec. 1, 2006).[9] *Compare George v. McDonough*, 991 F.3d 1227, 1234-36 (Fed. Cir. 2021) (concluding that it was not bound by its own nonprecedential decision (citing FED. CIR. R. 32.1(d)),[10] *with Jones v. Merit Systems Protection Board*, 98 F.4th 1376, 1381-82 (Fed. Cir. 2024) (concluding that an administrative law judge's reliance on a nonprecedential Federal Circuit case was not error because the reliance was only for informative, exemplary legal support rather than binding, controlling authority).

This Court, similarly, considers nonprecedential cases only to the extent that they contain persuasive reasoning. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (recognizing that a nonprecedential authority may be "relied upon . . . for any persuasiveness or reasoning it contains"); *see also, e.g.*, *Jackson v. McDonough*, 37 Vet.App. 277, 285 (2024); *Kernz v. McDonough*, 36 Vet.App. 372, 387 (2023) (en banc); *Harper*, 30 Vet.App. at 360 (all relying on nonprecedential cases as persuasive authority).

However, although the Federal Circuit found Mr. Aviles-Rivera's appeal moot, it provided no analysis and no reasoning supporting its dismissal. *See Aviles-Rivera II*, 2024 WL 2952689, at *1. The Secretary recognizes as much, as he cites not to the Federal Circuit *Aviles-Rivera* decision analysis but to the Government's supplemental briefing to support his mootness argument. *See* Secretary's Br. at 7. The Federal Circuit provided no explanation why it considered the appeal moot. To that end, the dismissal does not even mention that the RO had granted Mr. Aviles-Rivera's supplemental claims. Without any analysis to draw from, the Secretary relies on his own inference about the Federal Circuit's reason for finding Mr. Aviles-Rivera's appeal moot. Therefore, we disagree with the Secretary that *Aviles-Rivera II* is "instructive and persuasive" and should govern Mr. Johnson's case. *See* Secretary's Br. at 7.

---

[9] *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1341, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

[10] In *Perciavalle v. McDonough*, we recognized that "*George* illustrated that we should exercise caution in applying the Federal Circuit's nonprecedential decisions." 35 Vet.App. 11, 36 n.16 (2021) (en banc), *aff'd in part, vacated in part*, 74 F.4th 1374 (Fed. Cir. 2023).

## F. Summary

When the RO in 2016 denied Mr. Johnson's claims for service connection, he appealed that decision to the Board, seeking one review on appeal. As the RO is a lower tribunal, its March 2023 grant of service connection for the claimed disabilities, in a separate and distinct claim stream and based on the liberalizing PACT Act, did not resolve the pre-PACT Act appeal pending before the Board. Therefore, we conclude that the Board erred in finding his Board appeal moot, and we remand for the Board to adjudicate Mr. Johnson's 2016 claims for service connection.

## IV. CONCLUSION

After considering the parties' briefs, the record on appeal, and the governing law, the Court REVERSES the portion of the December 11, 2023, Board decision that concluded that the appeal is moot, SETS ASIDE the Board's dismissal of claims for service connection for diabetes, bilateral lower extremity peripheral neuropathy, and hypertension, and REMANDS the matters for adjudication consistent with this decision.

15